Young, C.J.
Our common law has long imposed the same duty of care on landlords and merchants to remedy physical defects in premises over which they exert control. This consistency is premised on the similar degree of control both landlords and merchants exercise over the premises. Where third parties commit criminal acts against tenants and invitees in these controlled areas, landlords and merchants share a similar, albeit lesser, degree of control because of the inherent unpredictability of criminal conduct. Such unpredictability requires the imposition of a duty concomitant with the decreased amount of control. In MacDonald v PKT, Inc,[1] we held that Michigan law imposes a duty on a merchant only when the merchant has notice that a third party’s criminal acts pose a risk of imminent and foreseeable harm to an identifiable invitee. In such a situation, the merchant’s duty to that invitee is limited to reasonably expediting involvement of the police. Recognizing that landlords and merchants exert similar degrees of control over their premises, and cognizant of our historical and consistent treatment of their duty to remedy physical defects, today we make clear that landlords owe the same limited duty of care *600 when put on notice of criminal acts that pose a risk of imminent and foreseeable harm to an identifiable tenant or invitee — a duty to reasonably expedite police involvement.
In this case, because the plaintiff alleged that the landlord’s agents were informed of an imminent threat of criminal conduct against him and the landlord failed to contact the police after such notice, we affirm the judgment of the Court of Appeals in part and remand to the Court of Appeals for further proceedings consistent with this opinion.
I. FACTUAL AND PROCEDURAL BACKGROUND
Evergreen Regency Townhomes, LTD (Evergreen) is located in Flint, Michigan, and is owned and operated by Radney Management & Investments, Inc. (Radney). In 2003, Radney entered into a contract with Hi-Tech Protection (Hi-Tech) to provide Evergreen with security personnel to patrol the premises.[2] In the summer of 2006, Radney and Hi-Tech negotiated a new contract with an effective date of August 28, 2006.
On August 4, 2006, plaintiff, Devon Bailey, attended an outdoor social gathering in the common area of Evergreen’s apartment complex, where Hi-Tech’s security guards William Baker and Christopher Campbell were patrolling the premises in a golf cart. At one point during the social event, Evergreen resident Laura Green informed the security guards that defendant Steven Schaaf was brandishing a revolver and threatening to kill someone. The security guards did not respond. Sometime after Green informed the security *601 guards of Schaaf s behavior, the security guards heard two gunshots. Schaaf had shot plaintiff twice in his back, rendering plaintiff a paraplegic.
Plaintiff filed a civil suit against Schaaf,[3] Evergreen, Radney, and Hi-Tech, its owner, and the two security guards on duty at the time of the incident. Plaintiff alleged that the security guards, Baker and Campbell, were agents of Hi-Tech, and that Hi-Tech was an agent of Radney and Evergreen. Plaintiff asserted multiple claims against defendants on the basis of various theories of liability, including premises liability, negligent hiring and supervising, ordinary negligence, vicarious liability, and breach of contract. Defendants filed a motion for partial summary disposition under MCR 2.116(C)(8), arguing that no defendant owed plaintiff any duty. Plaintiff also filed a motion for partial summary disposition under MCR 2.116(0(10), asserting that as a matter of law defendants Radney, Evergreen, and Hi-Tech owed plaintiff a duty on the basis of the contract to provide security services. The Genesee Circuit Court granted defendants’ motion and denied plaintiffs motion, which resulted in the dismissal of plaintiffs claims.
The Court of Appeals affirmed in part and reversed in part the trial court’s order.[4] Regarding plaintiffs premises liability claim against defendants Evergreen and Radney, the Court of Appeals held that defendants owed plaintiff a duty to call the police in response to an ongoing situation on the premises, extending this Court’s decision in MacDonald to the landlord-tenant *602 context.[5] However, the Court of Appeals rejected plaintiffs argument that he was a third-party beneficiary of the provision-of-security contract between Hi-Tech and Evergreen, holding that the parties’ contract on which plaintiff relied — which had an effective date of August 28, 2006 — was not in effect on August 4, 2006, at the time of plaintiffs injuries.[6] Finally, the Court of Appeals, applying Fultz v Union-Commerce Assoc,[7] held that Hi-Tech did not owe plaintiff a duty that was separate and distinct from Hi-Tech’s duties under the original 2003 contract between Hi-Tech and Evergreen that was in effect at the time of plaintiffs injuries.[8]
Defendants Radney and Evergreen filed an application for leave to appeal in this Court, arguing that the Court of Appeals erred by extending MacDonald to the landlord-tenant context, or, alternatively, that defendants were not vicariously hable for the security guards’ negligence because the security guards were not their agents. Moreover, even if the security guards were defendants’ agents, defendants argue that they could not be hable as principals under Al-Shimmari v Detroit Medical Center.[9] Plaintiff also sought leave to cross-appeal the Court of Appeals’ holdings regarding plaintiffs claims that he was a third-party beneficiary of the contract between Evergreen and Hi-Tech, and that Hi-Tech owed plaintiff a duty that was separate and distinct from its contractual obhgations to Evergreen.
*603 We granted defendants’ application for leave to appeal and asked the parties to address
whether the Court of Appeals erred when it extended the limited duty of merchants — to involve the police when a situation on the premises poses an imminent risk of harm to identifiable invitees, see [MacDonald, 464 Mich at 322] — to landlords and other premises proprietors, such as the defendant apartment complex and property management company.[10]
II. STANDARD OF REVIEW
A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the basis of the pleadings alone and the ruling is reviewed de novo.[11] “The motion must be granted if no factual development could justify the plaintiff’s claim for relief.”[12] When deciding a motion under MCR 2.116(C)(8), the court must accept as true all factual allegations contained in the complaint.[13] Whether a defendant owes a particular plaintiff a duty is a question of law that this Court reviews de novo.[14] “Only after finding that a duty exists may the factfinder determine whether, in light of the particular facts of the case, there was a breach of the duty.”[15] While ordinarily a juiy determines what constitutes the breach of a duty to provide reasonable care under the circumstances, “in cases in which overriding public policy concerns arise, the court determines what constitutes reasonable care.”[16]
*604 III. HISTORY OF COMMON LAW DUTY OF LANDLORDS AND MERCHANTS TO REMEDY PHYSICAL DEFECTS IN AREAS UNDER THEIR CONTROL
It is a basic principle of negligence law that, as a general rule, “there is no duty that obligates one person to aid or protect another.”[17] However, our common law imposes a duty of care when a special relationship exists.[18] These special relationships are predicated on an imbalance of control, where “one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself.”[19] Michigan law has recognized that a special relationship exists between “[o]wners and occupiers of land [and] their invitees,” including between a landlord and its tenants and their invitees and between a merchant and its invitees.[20]
The law of torts has historically conditioned the special relationship on the control that a possessor of premises — whether landlord or merchant — exerts over the premises. As a result, the law of torts has treated landlords and merchants the same in the context of their duties to maintain the physical premises over which they exercise control. In the landlord-tenant context, Justice COOLEY’s seminal treatise on torts provides that, “[i]n case of office and apartment buildings *605 the landlord must exercise due care to keep the halls, stairs, passageways, and like appurtenances reasonably safe for the tenants and their families and servants and for those who come to visit or transact business with them.”[21] Professors Prosser and Keeton confirm the same and, moreover, recognize that landlords are “closely analogous” to merchants because they both have a duty to keep reasonably safe from physical hazard areas over which they exert control.[22]
This state’s common law has likewise historically recognized the congruence between a landlord’s and a merchant’s duties of care concerning the physical maintenance of premises over which they exercise control. This Court has consistently imposed on both landlords and merchants a duty of care to keep the premises within their control reasonably safe from physical hazard. In Butler v Watson, a poorly attached post situated on the rear porch of a residential apartment building fell and struck a small child.[23] When considering the duties that a residential landlord owes to his tenants and their guests, this Court reasoned that a landlord owes a duty to its tenants and “all those who were approaching or leaving their premises for legitimate purposes” to “exercise reasonable diligence to keep such common portions of the property in a reasonably safe condition... .”[24] This Court imposed the duty because of the control that the landlord continued to exercise over the common portion of the property:
*606 [I]n such circumstances!],] the landlord not having let the common portion of the property to any one tenant, he has reserved the control thereof to himself. Having thus reserved control, it is his duty to exercise ordinary care for the safety of those about the same, other than trespassers, or mere licensees.[25]
Thus, the landlord owed his tenants and their guests the duty to repair and make reasonably safe the porch upon which plaintiff was injured because it was a common area used by all the tenants and its control was reserved to the landlord.
Similarly, in Goodman v Theatre Parking, Inc, a man exited his car in defendant’s parking lot and stepped on a cinder, spraining his ankle.[26] This Court recognized that a merchant owed its invitees a “duty to maintain its premises in a reasonably safe condition in view of the contemplated use thereof and the purposes for which the invitation has been extended,” and held that the defendant was obligated to keep the surface of its lot in a safe condition so that its patrons would not be harmed in entering or leaving the parking lot.[27] Similarly, this Court’s caselaw has consistently established that a merchant’s duty of reasonable care over the physical premises does not extend to open and obvious physical hazards because of an invitee’s coexisting ability to take reasonable measures to avoid such hazards.[28]
*607 Siegel v Detroit City Ice & Fuel Co provides strong common-law support for concluding that a landlord and merchant have coextensive duties to protect invitees and tenants from physical hazards on the premises.[29] There, two defendants — the commercial owner of a parking lot and the merchant theater that leased the parking lot from the owner — were both held liable for an invitee’s injury that arose from a hazard on the parking lot. After getting out of his car on his way to the theater, the plaintiff fell in a large oblong hole in the parking lot, injuring his femur. This Court explained that, because both the owner/landlord and the merchant/tenant shared control of the property due to the “joint right of ingress and egress,” they both owed a duty of care to invitees on the property.[30] Recognizing that “[t]his is not a case where either the tenant or the landlord had exclusive control and possession of common passageways,” the Court’s decision turned on the fact that “defendants each had possession and control” of the premises.[31] Notably, this Court did not establish that different duties existed for the owner/landlord and the merchant/tenant.
Providing further support for this principle is our opinion in Lipsitz v Schechter, which continued to *608 recognize that a landlord owes a duty to its residential tenants and their invitees to keep areas under its control reasonably safe from physical hazards.[32] For that legal proposition, the Court cited both Butler, a case involving a landlord’s responsibilities for its residential common area, and Siegel, involving as defendants both a commercial landlord and its tenant/merchant. Lipsitz itself involved a tenant who was walking outside her 4-story apartment building and was struck by a screen window that fell from the building. The Court reaffirmed that “the element of control is of prime importance” when determining the existence of a duty.[33] Because the defendant landlord admitted that he had secured a screen window that had fallen from the building and that the landlord’s janitor occasionally removed the screens to wash them, the Court concluded that the landlord exercised control over the screen and was consequently under an obligation to remedy any defect with regard to the screen that constituted a hazard.[34]
These cases illustrate the consistency of our treatment of landlords and merchants as it pertains to the physical maintenance of the areas over which they retain control. Whether someone who controls a premises is a landlord or a merchant, the element of control forms the basis of imposing a duty to invitees. As illustrated in Butler, where “the landlord not having let the common portion of the property to any one tenant, he has reserved the control thereof to himself.”[35] Thus, where tenants, their invitees, or a merchant’s invitees lack control over certain premises, the *609 concomitant actor in the special relationship — the landlord or merchant — bears the burden of control and thus the duty keep such areas reasonably safe.[36]
IV LIABILITY FOR THE CRIMINAL ACTS OF OTHERS
Traditionally, the duty imposed on a landlord or merchant had been limited to protect tenants and other invitees from physical defects in the property over which they retained control, not to protect tenants and other invitees from the criminal acts of others in those controlled areas.[37] However, in a series of cases dating from the 1970s, this Court expanded the duty of both lándlords and merchants to protect their tenants and invitees from those criminal acts. The first case to do so, Manuel v Weitzman, held that a bar owner may be liable in common law negligence for failing to “take action to *610 protect [the plaintiff] from injury” by another patron when the defendant knew that the other patron “had engaged in a fight in a bar at some time before the attack,” when “the bartenders on duty did not take sufficient measures to eject him after he became obstreperous and disruptive,” and when “the bartenders did not act immediately to protect [the plaintiff] from injury” once the initial assault began.[38] In doing so, this Court included for the first time the criminal acts of others being among the hazards within the scope of a merchant’s duty “ ‘to its customers and patrons, including the plaintiff, of maintaining its premises in a reasonably safe condition and of exercising due care to prevent and to obviate the existence of a situation, known to it or that should have been known, that might result in injury.’ ”[39]
Similarly, in Samson v Saginaw Professional Building, Inc, this Court applied the same theory of liability to a commercial landlord that leased office space to an outpatient mental health clinic but that had failed “to provide some security measures or warnings for the safety of its tenants and visitors . . . .”[40] Although this case implied some duty for a landlord or merchant to take prophylactic measures to prevent third parties’ criminal acts before they are imminent,[41] it did not *611 specifically articulate the measures that a landlord or merchant must take to obviate the hazard of third parties’ criminal acts. Indeed, a vigorous dissent in Samson questioned the imposition of such an amorphous duty.[42]
Because “ ‘any legal standard must, in theory, be capable of being known,’ ”[43] this Court has since clarified the scope of the duty to prevent harm arising out of third parties’ criminal acts. In Williams v Cunningham Drug Stores, Inc, this Court held that “a merchant’s duty of reasonable care does not include providing armed, visible security guards to deter criminal acts of third parties.”[44] In doing so, this Court described the unpredictability of crime as the basis for limiting a merchant’s liability toward invitees:
[Although defendant can control the condition of its premises by correcting physical defects that may result in injuries to its invitees, it cannot control the incidence of *612 crime in the community. Today a crime may be committed anywhere and at any time. To require defendant to provide armed, visible security guards to protect invitees from criminal acts in a place of business open to the general public would require defendant to provide a safer environment on its premises than its invitees would encounter in the community at large. Defendant simply does not have that degree of control and is not an insurer of the safety of its invitees.[45]
In Scott v Harper Recreation, Inc, this Court reiterated the proposition that a merchant “ordinarily has no obligation to provide security guards or to protect customers against crimes committed by third persons” and explained that this principle remains in force “even where a merchant voluntarily takes safety precautions,”[46] such as hiring security guards or installing additional lighting. Accordingly, a merchant’s undertaking of measures to deter the crimes of others does not create a duty to eliminate those crimes. Indeed, the Court recognized that the alternative rule would create a disincentive for security measures.[47] In Mason v Royal Dequindre, Inc, this Court clarified that “merchants *613 have a duty to use reasonable care to protect their identifiable invitees from the foreseeable criminal acts of third parties.”[48] However, beyond indicating that a merchant’s actions “must be reasonable,” the Court did not articulate the scope of the merchant’s duty.
We finally did so in MacDonald, holding that “the duty to respond is limited to reasonably expediting the involvement of the police and that there is no duty to otherwise anticipate and prevent the criminal acts of third parties.”[49] As in Williams, we explained that, “[b]ecause criminal activity is irrational and unpredictable, it is in this sense invariably foreseeable everywhere.”[50] As a result, “it is unjustifiable to make merchants, who not only have much less experience than the police in dealing with criminal activity but are also without a community deputation to do so, effectively vicariously liable for the criminal acts of third parties.”[51] Although the element of control is essential in establishing a landlord or merchant’s duty over the premises, they “do not have effective control over situations involving spontaneous and sudden incidents of criminal activity. On the contrary, control is precisely what has been lost in such a situation.”[52]
In sum, MacDonald clarified the scope of a merchant’s limited duty regarding the criminal acts of third parties:
[Generally merchants “have a duty to use reasonable care to protect their identifiable invitees from the foreseeable criminal acts of third parties.” The duty is triggered by *614 specific acts occurring on the premises that pose a risk of imminent and foreseeable harm to an identifiable invitee. Whether an invitee is readily identifiable as being foresee-ably endangered is a question for the factfinder if reasonable minds could differ on this point. While a merchant is required to take reasonable measures in response to an ongoing situation that is taking place on the premises, there is no obligation to otherwise anticipate the criminal acts of third parties. Consistent with Williams, a merchant is not obligated to do anything more than reasonably expedite the involvement of the police. We also reaffirm that a merchant is not required to provide security guards or otherwise resort to self-help in order to deter or quell such occurrences.[53]
While this duty has remained in place for merchants since clarified in MacDonald, we have not explicitly articulated the scope of the duty with regard to residential or commercial landlords. We do so today.
V THE SCOPE OF A LANDLORD’S DUTY
In keeping with the traditional common-law understanding that landlords and merchants share a similar level of control over common areas that are open to their tenants and other invitees, and thus assume the same duty of reasonable care with regard to those common areas, we hold that a landlord’s duty regarding criminal acts of third parties is limited to and coextensive with the duty articulated in MacDonald. Thus, a landlord has a duty to respond by reasonably expediting police involvement where it is given notice of a “specific situation occurring] on the premises that would cause a reasonable person to recognize a risk of imminent harm to an identifiable invitee.”[54]
*615 Like a merchant, a landlord can presume that tenants and their invitees will obey the criminal law.[55] Because of the unpredictability and irrationality of criminal activity, “[t]his assumption should continue until a specific situation occurs on the premises that would cause a reasonable person to recognize a risk of imminent harm to an identifiable [tenant or] invitee.”[56] Only when given notice of such a situation is a duty imposed on a landlord. Notice is critical to determination whether a landlord’s duty is triggered; without notice that alerts the landlord to a risk of imminent harm, it may continue to presume that individuals on the premises will not violate the criminal law. To the extent this holding, and the holdings of MacDonald and Williams, conflict with Samson we limit Samson to the duty clarified today and in MacDonald and Williams.[57]
*616 We wish to make clear, however, that just as a landlord does not owe a duty of repair within a tenant’s leasehold,[58] a landlord likewise does not have a duty to respond to criminal acts occurring within the leasehold of a tenant. In both situations, the landlord has surrendered possession and control of the leasehold to the tenant.[59] Because our common law has consistently imposed a duty only where a landlord or merchant exercises control over particular premises, a landlord’s duty arises only when the triggering conduct occurs in those areas under the landlord’s control.
If and when a landlord’s duty is triggered, a reasonable response by the landlord is required. Typically, whether an actor proceeded reasonably is a question for the fact-finder. But, just as in MacDonald[60] and Williams,[61] we determine as a matter of law what constitutes reasonable care when a landlord is confronted with imminent criminal acts occurring on the premises under the landlord’s control. And, like MacDonald, we make clear that as a matter of law, the duty to respond requires only that a landlord make reasonable efforts to expedite police involvement. Landlords, like merchants, have a low degree of control over the criminal acts of others. Our conclusion today does not expand a landlord’s duty concerning third-party criminal acts; requiring more of a landlord than taking reasonable efforts to expedite police involvement would essentially result in the duty to provide police protection, a concept this Court has repeatedly rejected.[62] Consistent with our *617 recognition that the duty to provide police protection is vested with the government, and given the unpredictability of specific acts of crime, we decline to impose any greater obligation on a landlord.
VI. APPLICATION
Plaintiffs amended complaint alleges that plaintiff was attending a barbeque in a “common outdoor area” at Evergreen’s apartment complex, where his brother was a tenant. Plaintiff alleges that during the barbeque, Schaaf entered the premises with a handgun and made threats “to kill somebody.” Further, it is alleged that Laura Green, a tenant, informed the security guards, who were approximately 30 feet away from Schaaf, that “Schaaf was a non-resident, wielding a gun, [and] making threats to shoot people.” It is also alleged that Green “pointed at Schaaf, identifying him” to security guards Baker and Campbell. Importantly, plaintiff alleges that the security guards failed to “notify] any police authorities of Schaaf s dangerous presence,” even though Schaaf was “plainly observable in the immediate vicinity.”
We have no doubt that plaintiff alleges sufficient facts that, if accepted as true, justify imposing a duty on defendants to notify police of the ongoing situation that was taking place at Evergreen. As the Court of Appeals accurately explained, plaintiff alleges facts indicating “the extreme nature of the ongoing situation at Evergreen,” which involved “the most deadly circumstance of all” in the common area of the apartment complex: “a man brandishing a gun — apparently in full view of two security guards — who threatened to fire, and ultimately did fire, that gun with near fatal consequences.”[63] The *618 Court of Appeals also noted that in his complaint, plaintiff characterizes the alleged relationship between the security guards and the landlord as an agency “for purposes of responding to safety issues.”[64] Given the facts alleged involving the contract for security services between the security company and the landlord, we agree with the Court of Appeals that plaintiff has alleged sufficient facts that would impute to the landlord Green’s notice to Baker and Campbell of the ongoing situation involving Schaaf in a common area of the premises. As a result, defendants were on notice that their invitees and tenants faced a specific and imminent harm. Furthermore, plaintiff was an identifiable victim of that harm because he was within the range of the risk of harm created by Schaaf s conduct.[65] Thus, if we accept plaintiffs allegations as true, defendants had a duty to reasonably expedite the involvement of the police, and the Court of Appeals properly held that the defendants were not entitled to summary disposition under MCR 2.116(C)(8).
VII. CONCLUSION
In line with our consistent historical treatment of merchants and landlords in the context of their duty with regard to hazards in areas under their control, we apply the MacDonald framework to situations involving the landlord-tenant special relationship and, thereby, render consistent our treatment of landlords’ and merchants’ duties when faced with imminent criminal action. Because the plaintiff alleged that defendant’s hired security guards failed to contact the police when *619 clearly on notice of an imminent risk to him, we affirm this part of the Court of Appeals judgment.
However, we remand this case to the Court of Appeals for its consideration of Evergreen’s and Radney’s vicarious liability issues under Al-Shimmari,[66] including whether the issues were properly preserved for appeal. Finally, as to plaintiffs application for leave to appeal as cross-appellant, we vacate part V(E) of the Court of Appeals judgment,[67] which upheld the trial court’s dismissal of plaintiffs negligence claims against defendant Hi-Tech on the basis of the contract between Hi-Tech and Evergreen because it applied Fultz,[68] without discussing our clarification of Fultz in Loweke.[69] We remand this case to the Court of Appeals for reconsideration of that issue in light of Loweke and Hill[70] The application for leave to appeal as cross-appellant is denied in all other respects because we are not persuaded that the remaining question presented should be reviewed by this Court.
Kelly, J., and Zahra, McCormack, and Viviano, JJ., concurred with Young, C.J.

 MacDonald v PKT, Inc, 464 Mich 322, 338; 628 NW2d 33 (2001).

 T.J. Realty, Inc. conducted business under the assumed name of Hi-Tech. Timothy Johnson is the President of Hi-Tech and the owner of T.J. Realty, Inc.

 Schaaf pleaded nolo contendere to various criminal charges and is currently incarcerated. In the instant civil action against defendant Schaaf, the trial court entered a default judgment against Schaaf; as a result, his civil liability is not currently at issue.

 Bailey v Schaaf, 293 Mich App 611; 810 NW2d 641 (2011)

 Id. at 640-642.

 Id. at 625-626.

 Fultz v Union-Commerce Assoc, 470 Mich 460; 683 NW2d 587 (2004). After Bailey was submitted to the Court of Appeals, but before that Court issued its decision in the case, this Court clarified Fultz. See Loweke v Ann Arbor Ceiling & Partition Co, LLC, 489 Mich 157; 809 NW2d 553 (2011); Hill v Sears, Roebuck & Co, 492 Mich 651; 822 NW2d 190 (2012).

 Bailey, 293 Mich App at 642-643.

 Al-Shimmari v Detroit Med Ctr, 477 Mich 280; 731 NW2d 29 (2007).

 Bailey v Schaaf, 491 Mich 924 (2012). Plaintiffs application for leave to appeal as cross-appellant remained pending. Id.

 Spiek v Dep’t of Transp, 456 Mich 331, 337; 572 NW2d 201 (1998).

 Id.

 Simko v Blake, 448 Mich 648, 654; 532 NW2d 842 (1995).

 Loweke, 489 Mich at 162.

 Murdock v Higgins, 454 Mich 46, 53; 559 NW2d 639 (1997).

 Williams v Cunningham Drug Stores, Inc, 429 Mich 495, 500-501; 418 NW2d 381 (1988); MacDonald, 464 Mich at 336.

 Williams, 429 Mich at 498-499; Hargreaves v Deacon, 25 Mich 1, 4 (1872) (“[W]here injury arises to a person from the neglect of one, in doing his lawful business in a lawful way, to provide against accident, the question arises at once whether he was under any legal obligation to look out for the protection of that particular person under those particular circumstances. For the law does not require such vigilance in all cases, or on behalf of all persons.”), abrogated on other grounds, Stitt v Holland Abundant Life Fellowship, 462 Mich 591, 599; 614 NW2d 88 (2000).

 Williams, 429 Mich at 499.

 Id.

 Id. at 499-500.

 3 Cooley, A Treatise on the Law of Torts (4th ed), p 219.

 Prosser & Keeton, Torts (5th ed), § 63, p 440.

 Butler v Watson, 193 Mich 322, 323-324; 159 NW 507 (1916). The child was a guest of her grandparents who were tenants in the apartment building.

 Id. at 327-328, quoting Herdt v Koenig, 137 Mo App 589; 119 SW 56 (1909) (quotation marks omitted).

 Butler, 193 Mich at 327 (quotation marks and citation omitted).

 Goodman v Theatre Parking, Inc, 286 Mich 80, 81; 281 NW 545 (1938).

 Id. at 81-82. Nevertheless, this Court held that the plaintiff was ultimately barred from recovery because of his contributory negligence in failing to avoid the hazard. Id. at 83.

 Although Goodman negated the merchant’s liability on the basis of the plaintiffs contributory negligence, our subsequent caselaw has clarified that the scope of a premises possessor’s duty “does not generally encompass removal of open and obvious dangers.” Lugo v Ameritech *607 Corp, Inc, 464 Mich 512, 516; 629 NW2d 384 (2001). Specifically, Lugo held that “the open and obvious doctrine should not be viewed as some type of ‘exception’ to the duty generally owed invitees, but rather as an integral part of the definition of that duty.” Id. See also Hoffner v Goodman, 492 Mich 450, 460-461; 821 NW2d 88 (2012) (citation omitted) (“The possessor of land ‘owes no duty to protect or warn’ of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid.”).

 Siegel v Detroit City Ice & Fuel, Co, 324 Mich 205, 214; 36 NW2d 719 (1949).

 Id. at 213-214.

 Id. at 214.

 Lipsitz v Schechter, 377 Mich 685, 687; 142 NW2d 1 (1966).

 Id. at 687.

 Id. at 689.

 Butler, 193 Mich at 327 (quotation marks and citation omitted).

 Of course, a landlord’s duty does not extend to the areas within a tenant’s leasehold, because the landlord has relinquished its control over that area to the tenant. See Williams, 429 Mich at 499 n 10; Lipsitz, 377 Mich at 687 (“The lessor, absent agreement to the contrary, surrenders possession and holds only a reversionary interest. Under such circumstances, he is under no obligation to look after or keep in repair premises over which he has no control.”); Prosser & Keeton, Torts (4th ed.), § 63, pp 399-400. This relinquishment of control extinguishes the landlord’s duty of reasonable care over those areas.

 Prosser & Keeton, Torts (5th ed), § 63, p 442 (“Prior to 1970, there was no general tort duty on landlords to protect their tenants against criminal theft or attack.”); Goldberg v Housing Auth of City of Newark, 38 NJ 578, 587; 186 A2d 291 (1962) (“The duty to provide police protection is foreign to the history of the landlord-tenant relationship.”). Nationally, that duty began to expand in the context of the landlord-tenant relationship with Kline v 1500 Mass Ave Apartment Corp, 439 F2d 477, 481 (CA DC, 1970) (“[W]here, as here, the landlord has notice of repeated criminal assaults and robberies, has notice that these crimes occurred in the portion of the premises exclusively within his control, has every reason to expect like crimes to happen again, and has the exclusive power to take preventive action, it does not seem unfair to place upon the landlord a duty to take those steps which are within his power to minimize the predictable risk to his tenants.”).

 Manuel v Weitzman, 386 Mich 157, 166-167; 191 NW2d 474 (1971), overruled in part on other grounds Brewer v Payless Station, Inc, 412 Mich 673; 316 NW2d 702 (1982).

 Id. at 163, quoting Torma v Montgomery Ward & Co, 336 Mich 468, 476; 58 NW2d 149. Notably, Torma involved a merchant’s duty to clear a physical defect on the property, and thus typified the traditional understanding of premises liability discussed above.

 Samson v Saginaw Prof Bldg, Inc, 393 Mich 393, 408-409; 224 NW2d 843 (1975).

 See id. at 411 (Levin, J., dissenting) (“[W]hen the landlord is informed by his tenants that a possible dangerous condition exists in the building, he has a duty to investigate and take available preventative measures.”); Manuel, 386 Mich at 164, quoting Windorski v Doyle, 219 *611 Minn 402, 407; 18 NW2d 142 (1945) (“ ‘The proprietor of such a place has the undoubted right to exclude therefrom drunken and disorderly persons, and the right to remove and expel them when they become in that condition and disorderly, and likely to produce discord and brawls. Being clothed with such power and authority, a corresponding duty to do so in the interests of law and order, and for the protection of his other guests, should be imposed as a matter of law.’ ”).

 Samson, 393 Mich at 421 (Levin, J., dissenting) (“No line is discernible to distinguish the liability sought to be imposed on [the defendant] from potential liability of landlords who rent to psychiatrists or lawyers who see persons with violent or criminal backgrounds.”).

 Williams, 429 Mich at 503 n 18, quoting Holmes, The Common Law, Lecture III (1923), p 111.

 Williams, 429 Mich at 501. Although Williams stated in dicta that a landlord has more control in his relationship with his tenants than does a merchant in his relationship with his invitees, id. at 502 n 17, we note that our common law has historically treated the duties of landlords and merchants similarly. Nevertheless, it is notable that, in making this distinction, Williams refused to apply Samson to the merchant-invitee special relationship.

 Id. at 502. This Court has recognized that cases involving the duties of merchants regarding criminal activity on their premises have a bearing on the similar duties of landlords. After Williams, we remanded to the Court of Appeals a case that involved whether a residential landlord had a duty to provide security guards, for reconsideration in light of Williams, which held that a merchant had no duty to provide security guards. Bryant v Brannen, 431 Mich 865; 428 NW2d 346 (1988); on remand 180 Mich App 87; 446 NW2d 847 (1989).

 Scott v Harper Recreation, Inc, 444 Mich 441, 451, 452; 506 NW2d 857 (1993).

 Id. at 451 (“[W]e decline to adopt a theory of law under which a merchant would be effectively obliged not to take such measures.”). The Court also cited Lee v Borman’s, Inc, 188 Mich App 665; 478 NW2d 653 (1991), and Theis v Abduloor, 174 Mich App 247; 435 NW2d 440 (1988), for the proposition that “providing a measure of security does not oblige a merchant to continue the practice.” Scott, 444 Mich at 451 n 14.

 Mason v Royal Dequindre, Inc, 455 Mich 391, 405; 566 NW2d 199 (1997).

 MacDonald, 464 Mich at 326.

 Id. at 335.

 Id.

 Id. at 337.

 Id. at 338, quoting Mason, 455 Mich at 405 (citations omitted).

 MacDonald, 464 Mich at 335.

 Id.; see also People v Stone, 463 Mich 558, 565; 621 NW2d 702 (2001) (noting that an individual person can presume that others will obey criminal laws).

 MacDonald, 464 Mich at 335.

 We do not address the status of Johnston v Harris, 387 Mich 569; 198 NW2d 409 (1972), because it is not implicated under the facts of this case. In Johnston, the plaintiff was attacked in the unlocked and poorly lit vestibule of his apartment by a man who was lurking there. He alleged that the defendant landlord was liable for his injuries because of inadequate lighting in the vestibule and unlocked doors. Johnston held that the landlord’s duty to repair physical defects in common areas applies to “provid[ing] adequate lighting and locks.” Id. at 573. Johnston should he read in light of Scott, however, which reaffirmed Williams’ principle that we impose no liability on premises owners for the failure of voluntary safety precautions. In short, there is a duty imposed on merchants or landlords to repair defects on the premises, but there is no duty to provide extraordinary safety precautions like security guards or extensive lighting. See Williams, 429 Mich at 502; Scott, 444 Mich at 452; Stanley v Town Square Coop, 203 Mich App 143, 150-151; 512 NW2d 51 (1993) (holding that a premises owner has a duty to remedy a condition on the physical premises that creates “an unusual risk of criminal attack,” but no duty to protect from the general hazard of crime which is “inherent in the society in which we live”).

 See n 38.

 See Williams, 429 Mich at 499 n 10; Lipsitz, 377 Mich at 687; Prosser, Torts (4th ed.), pp 399-400.

 MacDonald, 464 Mich at 336.

 Williams, 429 Mich at 501.

 See, e.g., MacDonald, 464 Mich at 336-337; Williams, 429 Mich at 501.

 Bailey, 293 Mich App at 627-628.

 Id. at 641. Notably, “Green testified at her deposition that management had instructed the residents to call security to report any crimes.” Id. at 641 n 82.

 See MacDonald, 464 Mich at 334.

 Al-Shimmari, 477 Mich at 280.

 Bailey, 293 Mich App at 642-643.

 Fultz, 470 Mich at 460.

 Loweke, 489 Mich at 157.

 Hill, 492 Mich at 651.