# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 20, 2018

156972

Stephen J. Markman,
Chief Justice

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement,
Justices

DELISHA M. WILLIAMS, Personal
Representative of the Estate of SHARITA M.
WILLIAMS,
      Plaintiff-Appellant,

v

                SC: 156972
                COA: 332755
                Wayne CC: 15-000780-NO

CONSUELLA LEWIS and U.S. SECURITY
ASSOCIATES, INC., d/b/a ADVANCE
SECURITY,
      Defendants-Appellees.

_____/

On order of the Court, the application for leave to appeal the November 21, 2017 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

MCCORMACK, J. (*dissenting*).

I respectfully dissent from the Court's leave denial. I would have granted leave to consider whether the Court of Appeals properly analyzed the plaintiff's wrongful-death claim in its opinion reversing the trial court's denial of the defendant's motion for summary disposition.

Plaintiff Sharita Williams was shot and killed by an ex-lover and coworker, Myron Williams, at their workplace.[1] Sharita was a receptionist at the Park Family Healthcare clinic. Myron was a maintenance worker at the clinic. Sharita began a romantic relationship with Myron in March of 2012 but eventually broke it off. Myron responded by stalking and threatening her.

In April 2013, in response to Myron's stalking and threats, the Wayne Circuit Court issued a personal protection order (PPO) ordering Myron, among other directives, to avoid coming to the clinic between 9:00 a.m. and 5:00 p.m. Sharita discussed the PPO and the reasons it was issued with coworkers, including security guard Consuella Lewis. Lewis worked for Advance Security, a company that was contracted to protect Park Family Healthcare. Sharita asked Lewis to serve the PPO on Myron on April 8, but she refused. Sharita told Lewis that the PPO barred Myron from entering the clinic between 9 a.m. and 5 p.m. She also told Lewis that Myron shared nude pictures of her with her

---

[1] Sharita and Myron were not related.

acquaintances, broke into her home, and stole her car, and that she had to move into a new home because Myron was harassing her. Lewis also knew that Myron carried a concealed pistol and always brought it to work.

The next morning, Lewis was on duty at 9:00 a.m. when Myron entered the building. Lewis thought it was "weird" for Myron to walk up to the building—he usually drove his truck—but did nothing to stop him as he entered the clinic through the employees' door. Lewis recalled there was nothing unusual about his appearance, although another witness said Myron looked like "trouble." A minute later, Myron shot and killed Sharita and then himself.

Sharita's estate filed a wrongful death action against Lewis and Advance Security. The defendants filed a motion for summary disposition under MCR 2.116(C)(10). The trial court denied it, but the Court of Appeals reversed on an interlocutory basis in an unpublished per curiam opinion. The panel held that Advance Security owed no duty to Sharita because her employer, which contracted with Advance Security, had no duty to protect her from Myron's criminal acts.

Generally, there is no duty to protect a person from the criminal acts of a third party. See *Bailey v Schaaf*, 494 Mich 595, 604 (2013). But "a landlord has a duty to respond by reasonably expediting police involvement where it is given notice of a specific situation occurring on the premises that would cause a reasonable person to recognize a risk of imminent harm to an identifiable invitee." *Id.* at 614 (cleaned up). The panel relied on this principle to hold that, "given the comparability of the employer-employee relationship to the landlord-tenant and business invitor-invitee relationships, . . . the same limited duty applies [to employer-employee relationships]." *Williams Estate v Lewis*, unpublished per curiam opinion of the Court of Appeals, issued November 21, 2017 (Docket No. 332755), p 5. As the quoted language suggests, the decision to liken the employer-employee relationship to the landlord-tenant relationship was a new doctrinal development. And maybe it is a sound development, but I believe it warrants closer review from this Court. There may be reasons to treat the two relationships differently.

In addition, assuming *Bailey v Schaaf* is the correct standard for evaluating this claim, I am not confident that the Court of Appeals properly reversed the trial court's

decision to deny summary disposition. A party is only entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183 (2003). A trial court's grant of summary disposition is reviewed de novo. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162 (2011). In *Bailey*, the defendant-landlord hired security guards to protect guests in their apartment complex. A man entered the complex with a handgun and threatened to kill someone, and a tenant informed security. Security did not respond, and the man shot the plaintiff in the back, paralyzing him. The plaintiff sued both the landlord and the security company. *Bailey*, 494 Mich at 600-601. This Court held that a landlord has a duty to reasonably expedite police involvement when given notice of imminent harm to an identifiable invitee, *id*. at 615-616, and this duty was imputed to the security guards through their agency relationship with the landlord, *id*. at 618. Because the shooter plainly posed a danger to the plaintiff, the guards had a duty to notify the police. *Id*.

Although there is no evidence that Myron entered the workplace announcing his intent to kill, Lewis knew that there was a court order preventing him from entering the workplace at the time he did so, that the court order was entered because he had been stalking and harassing Sharita and had committed past crimes against her, and that he had made a habit of carrying a firearm. Given all of this, I question whether the trial court erred by denying the defendant's motion for summary disposition. I do not see an error in the court's determination that there was a question of material fact as to whether these circumstances would cause "a reasonable person to recognize a risk of imminent harm to an identifiable invitee." *Id.* at 614.

I would have granted leave to give these questions full consideration.

BERNSTEIN, J., would grant leave to appeal.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 20, 2018



Clerk

t0717