*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ARNOLD CHRISTOPHER DANIEL, as Next
Friend of CAD, Minor,

      Plaintiff-Appellant,

v

RYAN CUONG LE-NGUYEN also known as
RYAN CYONG LE-NGUYEN and MICHELE
INHMATHONG,

      Defendants-Appellees.

UNPUBLISHED
January 14, 2026
10:54 AM

No. 376199
Washtenaw Circuit Court
LC No. 21-000786-NO

Before: SWARTZLE, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

On June 6, 2021, defendant, Ryan Le-Nguyen, was inside his residence when he heard a commotion outside, which he described as loud bangs, like a hard, heavy object hitting the exterior of the house. Previously, Le-Nguyen had some conflict with young children in the neighborhood who left toys and bicycles in front of the house, which displeased him. Part of the commotion that Le-Nguyen heard that day appears to have resulted from the children knocking on the front door of the house, a beverage being thrown at the front door, or both. In response to this commotion, Le-Nguyen recklessly fired a gun through the front window, which struck six-year-old CAD in the arm, as the child was standing on the sidewalk. Le-Nguyen pleaded *nolo contendere* to two felonies,[1] and stipulated to entry of a civil judgment in favor of plaintiff Arnold Christopher Daniel, as Next Friend of CAD. The present appeal does not involve any claims against Le-Nguyen. Rather, the two questions presented pertain to counts of negligence and nuisance brought against the owner of the house, Michele Inhmathong, who was not present at the time of the incident, but who allowed Le-Nguyen to live in the house, knew that Le-Nguyen kept his firearms in the house, and allegedly knew he had some conflict with neighborhood children. The trial court granted

---

[1] Discharging a weapon in a building causing injury, MCL 750.234b(3), and possession of a firearm in the commission or attempted commission of a felony, MCL 750.227b(1).

-1-

summary disposition to Inhmathong pursuant to MCR 2.116(C)(10) on the basis that she did not owe a duty to CAD, meaning she could not be liable for negligence, and that Le-Nguyen's criminal misconduct was not foreseeable to Inhmathong, such that plaintiff could not prove his public nuisance claim. We affirm.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff filed the subject complaint against both defendants on July 21, 2021, alleging causes of action for negligence and nuisance. Factually, plaintiff alleged that CAD was retrieving his bicycle from defendants' yard on June 6, 2021, when Le-Nguyen accidentally shot the minor in the arm. Plaintiff further alleged that Le-Nguyen was a cohabitant of the house, and that Inhmathong was a cohabitant and owner. The premises were alleged to have been maintained in "a reckless and dangerous condition in the form of a loaded firearm." Additionally, defendants allegedly knew, prior to the accident, that children played in their yard and the immediate area, and that defendants had not warned those children of the "dangerous condition or danger of being shot." Finally, plaintiff alleged that Inhmathong should have known of Le-Nguyen's "propensity and or aggressive behavior to the children in the neighborhood."

Plaintiff's negligence claim, as averred in the complaint, can be summarized as follows: (a) defendants created a dangerous condition by having a loaded firearm at their home; (b) defendants breached the duty of reasonable care owed to plaintiff by failing to maintain safe premises, and by failing to inspect, test or assess the dangerous condition, i.e., the loaded firearm; (c) defendants breached the duty of reasonable care by failing to take precautions that would maintain a safe environment, failed to warn of dangerous conditions on the land, and failed to protect plaintiff from foreseeable dangers; and (d) CAD suffered injuries and damages as the direct and proximate, foreseeable result of those breaches of the duty of reasonable care.

As for the nuisance claim, plaintiff alleged that having a loaded firearm at defendants' home created and maintained their premises in a reckless, dangerous, and hazardous state so that it constituted a nuisance that caused the injuries to CAD.

Inhmathong filed an answer to the complaint admitting that she owned the premises where Le-Nguyen lived. She asserted several affirmative defenses, including that plaintiff's complaint failed to state a cause of action upon which relief could be granted.

Approximately one year after the filing of the complaint, after the court-ordered discovery period ended, Inhmathong filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiff's case was an intentional tort case disguised as an action brought forth under theories of premises liability, negligence, or both, and that Ihhmathong's only nexus to the shooting incident was that she owned and lived at the subject premises. She noted that Le-Nguyen pleaded no contest to criminal charges arising out of the shooting and was currently in prison as a result. Inhmathong alleged it was undisputed that she was not even present at the time the shooting. She argued that the trial court was not bound by the labels that plaintiff attached to the complaint, that plaintiff failed to identify how he was injured by any defect on the premises, and that plaintiff had not proven or even articulated a cognizable premises liability claim because there was no allegedly defective condition on the land. Inhmathong further argued that, under MCR 2.116(C)(10), because plaintiff offered no evidence during discovery demonstrating that she owed

a duty to plaintiff, or that she committed any act that would breach a duty to plaintiff, she was entitled to summary disposition. Finally, Inhmathong argued that plaintiff could not prove causation in this matter because an intervening, illegal action, caused plaintiff's injuries.

In support of his response to Inhmathong's motion, plaintiff filed his own signed affidavit, the allegations of which can be summarized as follows: (1) neighbors told plaintiff that Le-Nguyen drove recklessly on the street, (2) Le-Nguyen told him he was going to order a gun, (3) plaintiff's children and other children told plaintiff that Le-Nguyen chased children out of his yard and threw their bikes and toys in his trash, (4) plaintiff has seen Inhamthong sitting on the front steps of the house while children were playing in the yards, (5) neighbors have informed plaintiff that Le-Nguyen was upset about neighbors parking in front of the house, (6) plaintiff is aware that the township received complaints about defendants working on cars in the garage and failing to maintain the property, and (7) it was generally known that Le-Nguyen was hostile, aggressive to children and neighbors in the neighborhood and was in need of mental health treatment.[2]

Plaintiff also attached portions of the defendants' deposition transcripts. According to plaintiff, those transcripts establish that: Inhmathong was the sole owner of the house, Le-Nguyen has lived there since she purchased the house in 2016, Le-Nguyen kept two firearms at the house that he purchased for protection as a result of crime in the neighborhood, Inhmathong told Le-Nguyen that she did not want a firearm in her home but Le-Nguyen did not comply with her preference, Le-Nguyen had frequent conflicts with neighbors that included taking toys belonging to neighborhood children and throwing bicycles in a dumpster, neighbors complained to the township about Le-Nguyen, and Inhmathong has a doorbell camera through which she could see children playing in the neighborhood.

Relying on the police report for the subject incident, as well as a news story that plaintiff found on the internet, plaintiff's response asserted that children were playing on the sidewalk in front of defendants' residence on the date of the incident, that Le-Nguyen came out of the house and threatened to hit the children with a hammer, that one of the children knocked on defendants' door after Le-Nguyen returned inside, that Le-Nguyen perceived the knocking as a threat and fired a gun blindly through the front window of the house, and the bullet struck CAD while he was standing on the sidewalk in front of defendants' residence.

Despite Inhmathong's assertion to the contrary, plaintiff argued that his complaint asserts a claim for nuisance, not premises liability. Relying upon *Wagner v Regency Inn Corp*, 186 Mich App 158, 163-164; 463 NW2d 450 (1990), plaintiff argued that Inhmathong created a nuisance in fact arising from her negligence with respect to Le-Nguyen's aggressive behavior towards the neighborhood children and the two guns he possessed in the residence, all of which were known to Inhmathong. Thus, plaintiff essentially argued that Inhmathong's knowledge of Le-Nguyen's conflict with local children, combined with his possession of firearms on the premises, created a question of fact for a jury as to whether it constituted a public nuisance that caused CAD's injuries for which she could be found liable.

---

[2] We note that at least four of the statements contained in plaintiff's affidavit arguably constitute inadmissible hearsay.

Plaintiff also argued that the same evidence created a question of fact as to whether Inhmathong was negligent. Again, relying upon *Wagner*, plaintiff claimed that a property owner has a duty to prevent risk to the public from wrongful or criminal activities by third parties about which the landowner knew or should have known. Plaintiff alleged that Inhmathong knew or should have known that Le-Nguyen would act violently and unlawfully towards the children because of his history of conflicts with the children and his possession of firearms in the house. Plaintiff also alleged that other evidence suggested that Inhmathong should have known Le-Nguyen would act violently, including the fact that he was involved in a motor vehicle accident that resulted in a total loss of Inhmathong's car and his suffering a closed head injury (for which he received no medical treatment, and due to which he suffers from daily headaches).

In reply, Inhmathong argued that plaintiff's response contained multiple misrepresentations of the fact. First, while plaintiff argued that Le-Nguyen had frequent conflicts with the neighbors, Inhmathong noted that the response provides no evidentiary support for this allegation. Second, while plaintiff alleged that Le-Nguyen took toys from the neighborhood children and threw bicycles in the garbage, Inhmathong's deposition testimony contends that she received no such complaints and Le-Nguyen never talked to her about any complaints he received. Le-Nguyen likewise testified at his deposition that he did not tell Inhmathong about the complaints he received. Accordingly, Inhmathong argued that plaintiff's claims failed because he could not even demonstrate an issue of material fact as to whether Inhmathong had notice of any problematic activity, let alone the alleged ongoing, illegal, dangerous activity.

Following a hearing, the trial court denied Inhmathong's motion for summary disposition in November 2022. Inhmathong then filed a motion for reconsideration, which the court also denied the following month.

Inhmathong then filed an application for leave to appeal, which this Court denied in April 2023. *CAD v Le-Nguyen*, unpublished order of the Court of Appeals, issued April 5, 2023 (Docket No. 364545).

Two years later, in April 2025, after much trial preparation, Inhmathong filed another motion for summary disposition, this time relying upon both MCR 2.116(C)(8) and (C)(10). Inhmathong argued that plaintiff's negligence claim failed because: she owed no legal duty to plaintiff to prevent the criminal act of another, there was no special relationship between her and CAD, she had no ownership interest relevant to plaintiff's location on the sidewalk, and she could not have foreseen the criminal act committed by Le-Nguyen. In addition, Inhmathong argued that because the shooting was unforeseeable, plaintiff could not establish proximate cause. Regarding the nuisance claim, she argued there was no evidence of any dangerous condition on the property and no indication that she created, maintained or permitted an ongoing hazard.

Plaintiff responded by objecting to the motion for summary disposition on the basis that: the original scheduling order required such a motion to be heard by October 2023, the trial court denied Inhmathong's prior motion for summary disposition and subsequent motion for reconsideration, and this Court denied Inhmathong's application for leave to appeal from those rulings. Plaintiff also filed a brief in support of the response, essentially restating the arguments made in his brief in response to Inhmathong's first motion for summary disposition.

Inhmathong's reply again contended plaintiff's lacked evidentiary support for his factual allegations and made multiple misrepresentations of fact, that plaintiff's reliance on *Wagner* is distinguished, and that the nuisance claim fails because Le-Nguyen is not a condition of the property and his one-time use of the firearm was an intentional criminal act that was not foreseeable.

At the motion hearing, the trial court stated that it was granting Inhmathong's motion for summary disposition. First, the court explained that it did not find an issue of material fact that Le-Nguyen's action in discharging the firearm was foreseeable. The court indicated plaintiff had not established that Inhmathong owed a duty to plaintiff. Further, the court noted that Le-Nguyen's criminal act, which occurred when Inhmathong was not home, involved a firearm that she did not own. Had Inhmathong owned the gun, the court suggested, she might have owed a duty to secure the weapon, but there is no such allegation or evidence here. The court did not agree that Le-Nguyen's having yelled at children in the neighborhood made it foreseeable that he would shoot a firearm out the window. In summation, the court held that it could not find, under Michigan law, that Inhmathong owed a duty to plaintiff, that Le-Nguyen's action was foreseeable, or that the facts of this matter constituted a public nuisance, and granted Inhmathong's motion pursuant to MCR 2.116(C)(10).

On May 7, 2025, the trial entered an order granting Inhmathong's second motion for summary disposition. The trial court entered an order denying plaintiff's timely filed motion for reconsideration of that order on June 9, 2025. Plaintiff filed a timely claim of appeal to this Court within 21 days of entry of the June 11, 2025 judgment against Le-Nguyen, the final order in this matter.

## II. STANDARD OF REVIEW

We review a trial court's decision to grant or deny summary disposition de novo. *Krieger v Dep't of Environment, Great Lakes, and Energy*, 348 Mich App 156, 170; 17 NW3d 700 (2023).

MCR 2.116(C)(8) provides that a defendant may move for summary disposition under MCR 2.116(C)(8) if the plaintiff "has failed to state a claim on which relief can be granted." "[A] motion for summary disposition is granted [under MCR 2.116(C)(8)] if the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Simko v Blake*, 448 Mich 648, 654; 532 NW2d 842 (1995). Such a motion "is tested on the pleadings alone, and all factual allegations contained in the complaint must be accepted as true." *Id*.

A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).

> When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves

open an issue upon which reasonable minds might differ. [*Id*. (quotation marks and citations omitted).]

"If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court." *Estate of Miller v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020).

## III. ANALYSIS

## A. NUISANCE

On appeal, and again relying upon *Wagner*, 186 Mich App at 163, plaintiff argues that Michigan law recognizes a landowner may be liable for a nuisance in fact arising from criminal behavior occurring on the property when such conduct is ongoing and known to the landowner. However, plaintiff's reliance upon *Wagner* is misplaced. As plaintiff argues, the principle announced in *Wagner* was that "creating or allowing continuing patterns of criminal activity on [the] premises which endanger" invitees could impose liability upon the landowner. *Id*. at 162-163. In the present case, however, plaintiff does not rely upon evidence demonstrating that defendant allowed continuing patterns of criminal activity on the premises; rather, plaintiff's evidence, consisting of the above-referenced affidavit and the depositions of Le-Nguyen, Inhmathong, and plaintiff, support that there was a potential civil dispute between Le-Nguyen and the neighbors. Certainly, the fact that Le-Nguyen owned firearms that he kept in the house is not, by itself, a criminal activity, yet plaintiff nonetheless implies that it is. Likewise, the disputes that are alleged to have existed between Le-Nguyen and the neighbors, including Le-Nguyen yelling at the neighborhood children and removing the children's toys and bicycles from his yard are not crimes. Removing those items from his yard and allegedly throwing them in a dumpster might constitute a civil property dispute, but it certainly could not be deemed to equate to the type of ongoing criminal activity that was the subject of the civil action in *Wagner*.

Plaintiff also argues that contradictions between the contents of his affidavit, the deposition testimony of Inhmathong, and the testimony of Le-Nguyen, created questions of fact as to the duty element, and, more specifically, on the issues of notice and foreseeability. However, none of the contradictions referenced by plaintiff create a genuine issue of material fact in this matter. Specifically, plaintiff points to inconsistencies between Le-Nguyen's and Inhmathong's testimony as to whether Inhmathong had ever asked Le-Nguyen to remove his guns from the home. But, even if we assume that Inhmathong did, in fact, ask Le-Nguyen to remove his guns from her home, and even if Le-Nguyen did not comply with that request, those facts do not support a finding of the type of ongoing criminal activity described in *Wagner*; rather, considering those facts in the light most favorable to plaintiff, those facts demonstrate a simple dispute among housemates, without any criminality involved.

Because plaintiff failed to offer sufficient evidence to create a genuine issue of material fact on his nuisance claim, we find that the trial court did not err when it granted summary disposition on that claim.

B. NEGLIGENCE

Plaintiff next argues that Inhmathong was negligent because she permitted a foreseeable dangerous condition to persist, relying upon *Ross v Glaser*, 220 Mich App 183, 186-187; 559 NW2d 331 (1996). Plaintiff argues that Inhmathong was aware of Le-Nguyen's possession of the firearm he used to shoot the six-year-old, requested that he remove it from her home, but failed to take steps to remove the guns or "mitigate the threat."

The underlying facts in *Ross* are not reasonably comparable to the present case. In *Ross,* the defendant, John Glaser, had a son with a history of paranoid schizophrenia and other mental disturbances. Prior to the conduct at issue in *Ross*, there was a history of tension between the defendant's family and the decedent's family, and a group of people that included members of the decedent's family assaulted or harassed Glaser's son, which led Glaser's son to purchase three guns. *Ross*, 220 Mich App at 184-185, 187. On the date of the incident, neighborhood youths were taunting Glaser's son. While in an agitated state, Glaser's son entered their house, asked the defendant to hand him one of the guns, and the defendant complied. *Id*. at 185. Glaser's son then left the house (despite the defendant trying to physically restrain him), drove away in a car, found the plaintiff's decedent at a nearby store, and shot him to death. *Id*. The plaintiff sued the defendant for negligently handing his son the gun, which he alleged was a proximate cause of plaintiff's decedent's death. The trial court granted summary disposition to the defendant. *Id*. at 185-186.

This Court reversed, holding that the defendant owed the plaintiff a duty and that there was a question of fact on the issue of proximate cause. The *Ross* Court noted that its case was not one for *nonfeasance* or passive inaction, but rather, because the defendant handed the gun to his son, it was a case of alleged *misfeasance* or active misconduct. *Id*. at 186-187. It held that the harm to plaintiff's decedent was foreseeable because of the defendant's son's chronic mental instability (including psychosis and repeated hospitalizations), an intense neighborhood conflict existed between his son and the decedent's family and their "backers," and his son purchased three guns because of the conflict, had been harassed that very day, and ran into the house and yelled for defendant to get his gun. *Id*. at 187-188. Given those circumstances, this Court held that, when the defendant handed his son the gun, it was foreseeable that he would shoot someone. *Id*. at 188. But the Court stressed that it was *not* finding that the defendant "had a duty to act where he failed to act." *Id*. at 190. Rather, "he had a duty not to act if, by doing so, he would create an unreasonable risk of harm," i.e., under the circumstances presented, he "had a duty not to hand his son a loaded weapon." *Id*. at 189-190.

This Court in *Ross* also found that a question of fact existed on the issue of whether the defendant's actions were a proximate cause of the death of the plaintiff's decedent. Although the defendant argued that his son's act of getting into a car, driving to the store, and shooting the victim were superseding acts that cut off liability, this Court noted that "[w]hen a defendant's negligence enhances the likelihood that the intervening act will occur, the act is reasonably foreseeable and the defendant remains liable." *Id*. at 193. The *Ross* Court concluded that, because "reasonable minds could differ on whether the [defendant's son's] intervening actions superseded the defendant's actions, thus cutting off liability," summary disposition on this issue was inappropriate. *Id*. at 193-194.

Unlike *Ross*, the present case does not involve allegations of misfeasance, but rather, plaintiff's allegations against Inhmathong sound in nonfeasance. "Generally, with respect to nonfeasance, there is no legal duty that obligates a person to aid or protect another. An exception has developed where a special relationship exists between the persons." *Ross*, 220 Mich App at 186-187 (citations omitted). While the defendant in *Ross* handed a gun to his son who was in an agitated state and suffered serious mental illnesses, which constitutes alleged misfeasance, Inhmathong in the present case was indisputably not involved in the subject incident, which occurred when she was not at home. Instead, plaintiff alleges that Inhmathong failed to act, i.e., the allegations sound in nonfeasance. The only similarity between *Ross* and the present case are that a shooting occurred and that the respective defendants were aware that the shooter possessed a gun. Unlike the defendant in *Ross*, Inhmathong did not hand a gun to Le-Nguyen in circumstances where his shooting someone was foreseeable, i.e., there was no misfeasance. Likewise, unlike *Ross*, there is no allegation in this matter that Le-Nguyen had a history of psychosis or that Inhmathong was aware of any such history. The mere fact that Inhamthong testified that she did not want Le-Nguyen's guns in her house does not equate the facts of the present case with the facts of *Ross*, in which the defendant literally handed his agitated, mentally-disturbed son a gun just after he had a confrontation outside of his house.

In his brief on appeal, plaintiff acknowledges that there is no legal duty in Michigan to protect others from the criminal acts of third parties, but citing *Bailey v Schaaf*, 494 Mich 595, 614; 835 NW2d 413 (2013), he argues that an exception to that rule exists "where the risk is foreseeable, *or* a special relationship exists." (Emphasis added.) Plaintiff materially misstates *Bailey*'s holding. The exception in *Bailey* applies when a special relationship exists, such as the relationship between a premises possessor and their tenants and other invitees, *and* the risk is foreseeable. See *id*. at 609-610, 612-614. The owner and operator of the apartment complex in *Bailey* were found to owe a duty to the plaintiff based upon longstanding Michigan common law, which requires landlords and merchants to reasonably expedite police involvement when given notice of a specific situation occurring on the premises "that would cause a reasonable person to recognize a risk of imminent harm to an identifiable [tenant or] invitee." *Id*. at 615 (alteration in original) (quotation marks and citation omitted).

The plaintiff in *Bailey* was attending a barbeque in the common outdoor area of the defendants' apartment complex where his brother was a tenant when a person entered onto the premises with a gun and threatened "to kill somebody." This situation was brought to the attention of the defendants' security guards, who allegedly failed to contact the police. *Id*. at 617. The Court found that these allegations were sufficient for plaintiff to state a claim for negligence against the owner and operator of the apartment complex, where he "was an identifiable victim of that harm because he was within the range of the risk of harm created by [the gunman's] conduct." *Id*. at 617-618.

The special relationships referenced in *Bailey* "are predicated on an imbalance of *control*, where one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself." *Id*. at 604 (quotations marks and citation omitted). "Michigan law has recognized that a special relationship exists between owners and occupiers of land and their invitees, including between a landlord and its tenants and their invitees and between a merchant and its invitees." *Id*. (quotations marks, brackets and citation omitted). But plaintiff fails to establish that Inhmathong had a special relationship with CAD. The evidence in this matter

indicates that CAD was shot while he was standing on the sidewalk in front of defendants' house and not on her premises (and while Inhmathong was not home or alerted to any specific or imminent harm). Also, plaintiff makes no argument that CAD was an invitee. While the owner and operator defendants in *Bailey* owed a duty to the plaintiff, due to the special relationship between the defendants and their tenant's guest who, "was an identifiable victim of that harm because he was within the range of the risk of harm created by [the gunman's] conduct," plaintiff in the present case has not demonstrated that Inhmathong owed a duty to CAD.[3]

In addition, even if we determined that Inhmathong owed a legal duty to CAD, we agree with the trial court that no reasonable jury could decide that it was foreseeable to Inhmathong that Le-Nguyen would shoot the six-year-old victim, based on the argument proffered by plaintiff: that he owned two guns and had an ongoing conflict with children in the neighborhood that allegedly included chasing them out of the yard and throwing their toys and bicycles in the trash.

As a result, we find that the trial court did not err when it granted summary disposition on plaintiff's negligence claim.

Having found that the court did not err in granting summary disposition on plaintiff's claims of nuisance and negligence, we affirm the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(10).[4]

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace

---

[3] Again, to be clear, plaintiff does not argue that CAD was an invitee or a licensee of Inhmathong. Rather, throughout this case plaintiff has argued that his claims do not arise out of common law premises liability principles.

[4] Because the trial court did not rule on whether Inhmathong was entitled to summary disposition of plaintiff's nuisance and negligence claims under MCR 2.116(C)(8), we will not decide that issue in this matter, in which we affirm the trial court's holding that plaintiff failed to establish a genuine issue of material fact as to the elements of those claims under MCR 2.116(C)(10).