*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT GARDNER,

       Plaintiff-Appellant,

v

MICHIGAN STATE UNIVERSITY, MICHAEL
KILEY, JULIE BROCKMAN, MARIA PORTER,
and RANDY SHOWERMAN,

       Defendants-Appellees.

UNPUBLISHED
June 6, 2024

No.  363334
Ingham Circuit Court
LC No.  21-000103-NZ

Before:  GARRETT, P.J., and LETICA and MALDONADO, JJ.

PER CURIAM.

In this case involving alleged violations of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., plaintiff appeals by right the trial court's order partially granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(7) (statute of limitations), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact).  We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[1]

## I. BACKGROUND

In a prior appeal involving the same lawsuit but different claims and issues, we set forth most of the lengthy and contentious history of this case, which stretches back decades and involves numerous other lawsuits filed in both state and federal courts.  Much of this history is not relevant to the present appeal, which involves a narrower period between 2017 and 2020.  However, the contextual background is instructive:

---

[1] Because defendant Brockman is only tangentially involved in this appeal, we will refer to MSU, Kiley, Porter, and Showerman collectively as defendants.

This case arises from a long history of disputes and litigation between plaintiff, MSU, and MSU employees. Plaintiff is a Hispanic[2] male in his 60s. He holds a bachelor of science degree and a master's of science degree in animal science from MSU. In 1990, plaintiff began the doctoral candidacy program in agricultural economics at MSU. While engaged in the program, plaintiff began advocating on behalf of migrant workers, particularly in support of unionization. Plaintiff claimed that MSU administration took issue with his advocacy because it would compromise the school's relationships with farmers who funded MSU programs.

From 1993 to 2000, plaintiff filed several charges of discrimination against MSU and its employees with the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission (EEOC) on the basis of racial discrimination and retaliation for advocating on behalf of migrant workers. In 1997, he filed suit against MSU and the chairperson of the agriculture economics department for racial discrimination and retaliation, which was dismissed. In 1999, plaintiff was terminated from the doctoral program under the "pretext" that he was supposed to finish within eight years. He appealed this decision, and while the appeal was pending, he refused to vacate his campus office, and was arrested and convicted of trespassing. He filed another complaint in 2002 in circuit court against MSU, the Board of Trustees, and two employees under the Elliot-Larsen [sic] Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. This case was dismissed on the merits. In 2012, plaintiff filed a lawsuit in federal district court against MSU and the then-provost alleging violations of his constitutional and civil rights. This suit was dismissed and plaintiff was assessed sanctions in 2014.[3]

---

[2] Plaintiff alleged that he is Hispanic. In a prior matter, plaintiff explained that although he was born in the continental United States, his mother was born in Puerto Rico and his parents resided there. In a separate suit, plaintiff used the name Robert Gardner-Sandoval.

[3] In the opinion and order sanctioning plaintiff, the federal district court determined that: (1) "[t]his lawsuit is at least the fourth in a series of state and federal lawsuits filed by Plaintiff . . . against Michigan State University's Board of Trustees and its president, Lou Anna Simon," (2) plaintiff's "complaints are based on his unfounded conspiracy theories and not on any objective evidence," (3) plaintiff "has never presented evidence that MSU's failure to hire him for various positions . . . stems in any way from unlawful discrimination . . . based on any protected characteristic," (4) plaintiff "has engaged in discovery multiple times, but has never found evidence of the conspiracies or discrimination he asserts," (5) plaintiff made false representations to the court, other entities, and their parties about his status at MSU, (6) plaintiff falsely represented that he had prevailed in a lawsuit against MSU when the available record reflected that the defendants were granted summary disposition on plaintiff's ELCRA claims and that the parties later settled the matter, (7) plaintiff's "repeated lawsuits have been frivolous and the Court has reason to believe that Plaintiff is frequently untruthful," and (8) plaintiff's lawsuits had "been filed in bad faith because the claims were frivolous." *Gardner v Mich State Univ*, unpublished opinion

In 2015, plaintiff was hired by MSU as a research associate. In February 2016, plaintiff complained to his supervisor that he was being discriminated and retaliated against for filing the federal lawsuit, and later that same month, plaintiff's employment was terminated, according to plaintiff, without good cause. Thereafter, plaintiff started working with [defendant Julie] Brockman on a project proposal for developing best labor management techniques for fruit and vegetable growers. However, on April 11, 2016, plaintiff received an e-mail from Brockman stating that she was advised to discontinue the research. Plaintiff believed it was [defendant Michael] Kiley who advised Brockman to stop working with plaintiff. From September 2017 to August 2020, plaintiff applied for several positions with MSU. Plaintiff believes he was not hired because Kiley informed MSU administrators that plaintiff was blacklisted based on his prior civil rights complaints.

Plaintiff filed a 2019 lawsuit in pro per in Ingham Circuit Court against MSU, its Board of Trustees, the provost, and plaintiff's former supervisor, which was dismissed against the individuals with prejudice, and against MSU and the Board of Trustees without prejudice.[4]

\* \* \*

---

and order (WD Mich), decided April 29, 2014 (Docket No. 1:12-cv-1018), pp 1-3, 6. Moreover, the federal district court barred plaintiff from filing another lawsuit until he paid the sanction imposed and ordered him to "attach this opinion and the opinions dismissing each of his federal cases to any future lawsuits filed against MSU, its Board of Trustees, or Lou Anna Simon, in any state or federal court," even after he paid the sanction. *Id*. at 6. Although plaintiff contends that the federal district court lacked jurisdiction and the authority to impose this condition upon future lawsuits filed in a state court, he complied with this requirement when he filed his initial complaint in this case.

[4] Plaintiff's 2019 lawsuit was assigned to the same trial court judge that decided this matter. *Gardner v Simon*, Ingham County Circuit Court Docket No. 2019-000144-NZ. In addition to Simon, plaintiff named Ruben Martinez and the Michigan State Board of Trustees as defendants. In the 2019 complaint, under a section captioned "[a]melioration attempts," plaintiff alleged that

Plaintiff applied and was turned down for several MSU specialist positions he was superiorly qualified for. Job recommendations recanted their offers or quit interacting with Plaintiff. Other positions [Plaintiff] applied for were simply administratively closed down. The last position was canceled in August 2018.

In part, plaintiff alleged that the defendants violated ELCRA by retaliating against him. Plaintiff explained that Kiley, Simon's attorney, was involved and that Martinez terminated plaintiff without cause. Eleven months later, the trial court granted the defendants' motion for summary disposition, dismissing plaintiff's complaint against Simon and Martinez with prejudice while dismissing without prejudice as to MSU. *Gardner v Simon*, unpublished order of the Ingham County Circuit Court, entered January 15, 2020 (Docket No. 2019-000144-NZ).

Plaintiff filed his original complaint in this matter in Ingham Circuit Court against defendants on September 16, 2020, alleging 18 counts. Defendants filed a notice of transfer, transferring the case to the Court of Claims. The parties disputed the transfer, defendants moved for summary disposition, and plaintiff filed a first amended complaint, which defendants moved to strike because it was not verified as required under the Court of Claims Act, MCL 600.6401 *et seq*. On January 29, 2021, the Court of Claims entered an opinion and order transferring plaintiff's claims under the ELCRA back to the circuit court, denied defendants' motion for summary disposition without prejudice, and granted plaintiff leave to file a verified first amended complaint. Plaintiff moved for reconsideration of the court's order retaining jurisdiction of plaintiff's remaining claims, which the court denied. Defendants moved for summary disposition a second time, but plaintiff applied for leave to appeal the Court of Claims decision to retain jurisdiction. Thereafter, the Court of Claims entered an order holding the matter in abeyance pending the appeal, and granting plaintiff leave to file a second amended complaint. [*Gardner v Mich State Univ*, unpublished per curiam opinion of the Court of Appeals, issued December 29, 2022 (Docket No. 360377), pp 1-2.]

Of the 18 counts raised in plaintiff's complaint, counts 1 through 6, which did not involve any ELCRA claims, remained with the Court of Claims, were dismissed via summary disposition, and the dismissals were affirmed by this Court. See *Gardner*, unpub op at 2-3. These counts are not at issue in this appeal. In contrast, counts 7 through 18, which involved plaintiff's ELCRA claims, were transferred back to the circuit court and are the subject of this appeal.

Kiley was MSU's associate general counsel from 1986 to 2018. Porter was an assistant professor in MSU's Department of Agricultural, Food, and Resource Economics from 2013 to 2020. Showerman was MSU's Director of the Institute of Agriculture Technology. Plaintiff alleged that defendants discriminated against him based on his national origin and age and that each had retaliated against him, all in violation of ELCRA. According to plaintiff, he applied for nine positions with MSU between September 2017 and August 2020. Those positions were: (1) a "farm finance position" denied on September 11, 2017, (2) a "[s]ugar [b]eet outreach specialist position" denied on October 10, 2017, after it was closed without anyone being selected, (3) a "farm finance outreach staff position" denied on November 3, 2017, (4) a "farm finance outreach staff position" denied on November 13, 2017, (5) a "position conducting research on migrant Latino dairy workers" denied on March 22, 2018, (6) a "dry bean and sugar beet outreach staff position" denied on June 19, 2018, (7) a "Native American outreach program [position], which was closed, and then reopened," for which plaintiff never received an interview, but which he alleged was denied on August 28, 2018,[5] (8) a "dairy specialist position" denied on September 4,

---

[5] In regard to plaintiff's previous claim of an ELCRA violation for an "Outreach Specialist position posted in the summer of 2011," the federal district court granted the defendants' motion for summary disposition, noting that there were eleven candidates and that a three-person subcommittee had not selected plaintiff to be interviewed because "he lacked experience working with native populations and 'cultural competence' with respect to tribal communities." *Gardner*

2018, and (9) an "agricultural worker position" denied on August 8, 2020. Plaintiff alleged that he was qualified for the nine positions, that he was the only Hispanic applicant for each position, that defendants chose lesser qualified candidates who were non-Hispanic and younger, that defendants had no legitimate and nondiscriminatory reasons for not hiring plaintiff, and that defendants' supposed reasons for not hiring plaintiff were mere pretexts for discrimination. Plaintiff alleged that MSU and Kiley discriminated against him for the nine positions. In contrast, plaintiff alleged that Porter discriminated against him only for the dairy specialist position and that Showerman discriminated against him only for the agricultural worker position. Plaintiff alleged that Porter and Showerman handled the hiring for the two positions. Using similar language, plaintiff alleged that defendants had retaliated against him for his prior complaints and lawsuits against MSU by not hiring him for the nine positions.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10). Defendants argued that plaintiff's claims regarding the farm finance position were outside the three-year statutory limitations period. Plaintiff's complaint had alleged: "September 11, 2017 – denied farm finance position. A younger, non-Hispanic less qualified Caucasian candidate was selected for the position." Because plaintiff did not file his initial complaint in Ingham County Circuit Court Docket No. 2020-000501-NZ until September 16, 2020, defendants argued that any claims relating to this position were time-barred. Additionally, defendants contended that plaintiff's age and national origin discrimination claims failed to adequately allege the particularized facts that are needed to properly plead a valid ELCRA claim, thereby implicating MCR 2.116(C)(8). Defendants argued that plaintiff used conclusory, repetitive, and boilerplate allegations that mirrored the elements for an ELCRA claim. Finally, defendants argued that plaintiff's retaliation claims failed to create a genuine issue of material fact because there was no causal connection between the prior complaints and lawsuits and MSU's decision not to hire plaintiff for any of the positions, thereby implicating MCR 2.116(C)(10).

---

*v Mich State Univ Bd of Trustees*, No. 1:12-cv-1018, 2014 WL 558818 (WD Mich, February 11, 2014), p 2. The federal district court later elaborated:

> The [subcommittee's] report recounts that [plaintiff] "has no demonstrated ability to work with Tribal Communities . . . a necessary ability for this position;" his current project was "in such beginning stages" that it was unhelpful to demonstrate experience; he "has little experience working with tribes and tribal communities;" and he "may have overstated his role in the development of an outreach program with NAI [Native American Institute]." Further, the committee had concerns about Mr. Gardner using a "big brother" style approach to tribes and there were "a few other red flags" in the application. Other applicants for the position were also denied an opportunity to interview with the committee for similar reasons, mainly that they lacked experience and did not demonstrate their ability to work with tribal communities. This report satisfie[d] MSU's burden to articulate legitimate, non-discriminatory reasons for not hiring Mr. Gardner for this position. [*Id*. at p 4 (citations omitted).]

Defendants submitted affidavits from Kiley, Showerman, and Porter. Kiley averred that he had been unaware of plaintiff's applications for any of the positions, that he had never instructed anyone to reject plaintiff's applications, and that he had never communicated with Showerman or Porter. Showerman averred that he was part of a four-person panel that unanimously decided not to hire plaintiff because he was not qualified for the agricultural worker position. Showerman further averred that he had been unaware of plaintiff's prior complaints and lawsuits against MSU, that he had never communicated with Kiley, and that plaintiff's national origin, race, age, and past complaints and lawsuits against MSU did not play a role in the panel's decision not to hire plaintiff. Porter's affidavit averred that when she was an assistant professor she "periodically hired research assistants," who were "[t]ypically" "students." Moreover, to Porter's knowledge, she "never reviewed or rejected an employment application from" plaintiff. In fact, Porter was unaware that plaintiff "ever applied for employment with" her and had "never spoken or otherwise communicated with . . . Kiley about [plaintiff] or any other subject."[6]

Plaintiff countered that his claims for the farm finance position could not accrue until after defendants had hired one of the other candidates for the position. Plaintiff argued that September 11, 2017 was merely the date that he was denied employment but not the date that defendants hired the other candidate. Plaintiff contended that he did not know this date because defendants had not filed an answer and no discovery had yet occurred. Regarding his discrimination claims, plaintiff argued that defendants were attempting to hold him to a higher pleading standard. According to plaintiff, he had adequately alleged the elements for an ELCRA claim and was not required to provide additional facts to support those allegations. Finally, regarding his retaliation claims, plaintiff contended that summary disposition pursuant to MCR 2.116(C)(10) was premature because no discovery had occurred. Nonetheless, plaintiff submitted a "declaration" that largely reiterated the allegations of his complaint. The declaration also contained an e-mail from Kiley to plaintiff, a letter from Kiley to plaintiff, and one e-mail from Brockman to plaintiff.

The trial court agreed with defendants in part and dismissed the case.[7] The trial court determined that plaintiff's claims for the farm finance position accrued when he was denied the position and not when defendants had hired the other candidate. Therefore, the trial court granted summary disposition pursuant to MCR 2.116(C)(7) with respect to all claims involving this position. Additionally, the trial court granted summary disposition under subrule (C)(8) regarding plaintiff's national origin and age discrimination claims because plaintiff failed to plead adequate facts to show a prima facie case of unlawful discrimination. The trial court reasoned that plaintiff had failed to allege particularized facts establishing that he was qualified for the positions or that there were facts or circumstances giving rise to an inference of discrimination. Finally, the trial court granted summary disposition pursuant to subrule (C)(10) regarding plaintiff's retaliation claims because plaintiff failed to show a causal connection between the alleged protected activity and the alleged adverse employment action. The trial court discounted plaintiff's declaration for containing conclusory statements without any supporting evidence. The trial court determined

---

[6] Notably, the trial court did not consider Porter's affidavit in deciding defendants' motion for summary disposition because it was unsigned.

[7] Defendants raised other arguments not relevant to this appeal.

that summary disposition prior to discovery was not premature under the circumstances because discovery was not meant to allow a party to proceed with claims that were based on mere conjecture with the hope of finding support. The trial court concluded "that there was no genuine issue of material fact regarding the lack of a causal connection between Plaintiff's alleged protected activity and the alleged adverse employment events." Consequently, the trial court granted defendants' motion for summary disposition as to plaintiff's retaliation counts against MSU, Kiley, Showerman, and Porter.

This appeal followed.

## II. ANALYSIS

## A. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010) (footnotes omitted). Similarly, we review de novo whether a claim is barred by the statute of limitations. *Fraser v Almeda Univ*, 314 Mich App 79, 100; 886 NW2d 730 (2016). A motion is properly granted pursuant to MCR 2.116(C)(7) if a claim is barred because of the statute of limitations.

> The moving party may support its motion for summary disposition under MCR 2.116(C)(7) with affidavits, depositions, admissions, or other documentary evidence, the substance of which would be admissible at trial. The contents of the complaint are accepted as true unless contradicted by the evidence provided. [*Latits v Phillips*, 298 Mich App 109, 113; 826 NW2d 190 (2012) (quotation marks and citations omitted).]

A motion is properly granted pursuant to MCR 2.116(C)(8) when the opposing party fails to state a claim upon which relief can be granted. Such a motion "tests the legal sufficiency of the claim on the basis of the pleadings alone . . . ." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). See also *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019) ("A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint."). When reviewing the motion, the trial "court must accept as true all factual allegations contained in the complaint." *Bailey*, 494 Mich at 603. The trial court must grant the motion "if no factual development could justify the plaintiff's claim for relief." *Id.* (quotation marks and citation omitted).

Finally, a motion is properly granted pursuant to MCR 2.116(C)(10) when "there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Dextrom*, 287 Mich App at 415. We "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id.* at 415-416 (footnotes omitted). A court must not weigh the credibility of evidence or make findings of fact. *Franks v Franks*, 330 Mich App 69, 85; 944 NW2d 388 (2019). "The moving party can satisfy its burden of showing the absence of a genuine issue of material fact by submitting evidence that negates an

essential element of the nonmoving party's claim or by demonstrating that the evidence cannot establish an essential element of the nonmoving party's claim or defense." *Elizabeth Trace Condo Ass'n v American Global Enterprises, Inc*, 340 Mich App 435, 439; 986 NW2d 412 (2022). After doing so, "the burden shifts to the nonmoving party to submit evidence establishing that there is a genuine issue of material fact." *Id*. The nonmoving party "may not rest upon the mere allegations or denials of his or her pleading" but must instead "set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

## B. ACCRUAL

Plaintiff argues that the trial court erred by determining that his claims for the farm finance position accrued on September 11, 2017. According to plaintiff, his claims accrued when defendants hired the other candidate for the position. We disagree.

A plaintiff must file an ELCRA claim within three years of the accrual date. *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 284; 696 NW2d 646 (2005), amended 473 Mich 1205 (2005). There is no dispute that plaintiff filed his complaint on September 16, 2020, which means that any claims that accrued prior to September 16, 2017, are time-barred.[8] A plaintiff must "commence an action within three years of each adverse employment act by a defendant." *Id*. at 282. "[A]ccrual under the three-year statute of limitations is measured by 'the time the wrong upon which the claim is based was done regardless of the time when damage results.'" *Joliet v Pitoniak*, 475 Mich 30, 36; 715 NW2d 60 (2006), quoting MCL 600.5827.

Plaintiff relies on the four elements that must be shown in order to establish a prima facie case of discrimination under the ELCRA. "Because there is no direct evidence of impermissible bias, plaintiff's claim of intentional discrimination must proceed under the . . . burden-shifting framework" laid out in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed2d 668 (1973). *White v Dep't of Transp*, 334 Mich App 98, 107; 964 NW2d 88 (2020) (quotation marks and citation omitted). In order to establish a prima facie case of discrimination based on national origin under the ELCRA, a plaintiff must prove the following elements: "(1) [plaintiff] belongs to a protected class, (2) [plaintiff] suffered an adverse employment action, (3) [plaintiff] was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination." *Id*. at 108 (quotation marks and citation omitted). The same elements are to be applied to age discrimination cases. See *Major v Newberry*, 316 Mich App 527, 540-541; 892 NW2d 402 (2016).

---

[8] We note that plaintiff might have been entitled to tolling pursuant to certain administrative orders from our Supreme Court that purported to "exclude[] days during the COVID-19 state of emergency from the computation of time under MCR 1.108." *Carter v DTN Mgt Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360772); slip op at 1. However, plaintiff failed to raise tolling in the trial court, and he has chosen not to address tolling on appeal. Therefore, he has waived the issue. *Walters v Nadell*, 481 Mich 377, 389-390; 751 NW2d 431 (2008).

According to plaintiff, because element four requires a showing that the job was given to another person, his claim necessarily could not accrue until *after* defendants hired the other candidate for the farm finance position. However, plaintiff improperly conflates the elements necessary to establish a prima facie case of discrimination with the accrual of a claim for purposes of the statute of limitations. The two are distinct and separate legal questions. Plaintiff's complaint plainly set forth September 11, 2017, as the operative date that he was denied the farm finance position. Although the hiring of a lesser qualified and either non-Hispanic or younger person was undoubtedly a part of plaintiff's claim, the allegedly adverse employment action defendants took against plaintiff occurred when he was denied the position on September 11, 2017. The hiring of somebody else was not an adverse action taken against plaintiff; the action was his being denied the position. Rather, the hiring of someone else gives rise to an inference of unlawful discrimination. Because the law is clear that a claim accrues when the adverse employment action occurs, *Garg*, 472 Mich at 282, there is no merit to plaintiff's argument that his claim did not accrue until this evidence of discriminatory intent was produced.

Therefore, the trial court did not err by concluding that plaintiff's claims arising from denial of the farm finance position were time-barred.

## C. RETALIATION CLAIMS DISMISSED UNDER MCR 2.116(C)(10)

Plaintiff argues that the trial court erred by granting summary disposition on his retaliation counts under MCR 2.116(C)(10) because his "declaration" created a genuine issue of material fact and defendants' motion was premature prior to the completion of discovery. We disagree, except as to the retaliation claim involving Porter.

"Under ELCRA, an employer is liable if it retaliates against an employee for having engaged in protected activity, e.g., opposing a violation of the act's antidiscrimination provision." *White*, 334 Mich App at 114. See also MCL 37.2701(a). In order to establish a prima facie case of retaliation under the ELCRA, a plaintiff must prove four elements: "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Garg*, 472 Mich at 273 (citation omitted). In this case, the fourth element is the only one subject to dispute.

A party may move for partial summary judgment as a matter of law on the basis that "there is no genuine issue as to any material fact. . . ." MCR 2.116(C)(10). In the absence of a court's scheduling order, such a motion may be filed at any time. MCR 2.116(B)(2), (D)(4), and (G)(1). Defendants moved for summary disposition on the grounds that plaintiff could not establish a causal connection between his protected activity and the adverse employment action. Specifically, Kiley averred that he was unaware that plaintiff had applied for any of the positions, that he never prevented or instructed anyone against considering plaintiff for employment, and that he had never spoken with or otherwise communicated with Porter or Showerman. Showerman averred that plaintiff was interviewed by a four-person panel that unanimously determined that he was not qualified for the position. Showerman explained that, among other reasons, plaintiff "did not have significant connections to or knowledge about Montcalm County," he "confused Montcalm County with Macomb County several times during the interview," and he was "unfamiliar with basic technology used by the program." Showerman denied that he was aware of plaintiff's prior

complaints and lawsuit involving discrimination. Showerman further averred that he had never spoken to or otherwise communicated with Kiley about plaintiff or any other subject. Finally, Showerman averred that plaintiff's "national origin, race, age, and past complaints of discrimination played no role in the decision not to offer him the [] position." However, Porter's purported affidavit, which alleged that to her knowledge, she "never reviewed or rejected an employment application from [plaintiff]," was never signed, and therefore, the trial court declined to consider it. The trial court also determined that plaintiff's retaliation counts were sufficiently pled and survived defendants' challenge under MCR 2.116(C)(8).

When a motion under MCR 2.116(C)(10) is made and supported by an affidavit, "an adverse party may not rest upon the mere allegations or denials of his . . . pleading, but must by affidavits or as otherwise provided in [MCR 2.116], set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). "If the adverse party does not so respond, judgment, if appropriate shall be entered against him. . . ." *Id*. In ruling upon a motion for summary disposition, the court must only consider affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion filed under MCR 2.116(C)(10), "to the extent that the content or substance would be admissible as evidence to establish or deny the grounds" set forth in the motion. MCR 2.116(G)(6). In addition, in pertinent part, MCR 2.119(B) provides:

>(1) If an affidavit is filed in support of or in opposition to a motion, it must:
>
>(a) be made on personal knowledge;
>
>(b) state with particularity facts admissible as evidence establishing or denying the grounds stated in the motion; and
>
>(c) show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit.

In this case, plaintiff did not file an affidavit. Instead, he filed a "declaration."[9] Plaintiff's declaration was not notarized and stated its content was "true to the best of [his] information,

---

[9] We note that plaintiff's "declaration" states that it was created "[i]n accordance with MCL 600.2184 and MCR 1.109(D)(3)." MCL 600.2184(1) provides that, "[e]xcept as otherwise provided in subsection (2), if a law of this state requires or permits use of a sworn declaration, an unsworn declaration meeting the requirements of this chapter has the same effect as a sworn declaration." The exceptions provided in subsection (2) are irrelevant to this case. And MCL 600.2184 is part of the uniform unsworn *foreign* declarations act, MCL 600.2181 *et seq*. This provision applies only to declarations made *outside the United States*. See MCL 600.2184(1); MCL 600.2186 (an unsworn declaration requires an affirmation that the person preparing the declaration specify their location at the time of execution and that the person is "physically located outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, and any territory or insular possession subject to the jurisdiction of the United States.") Nothing in the record suggests plaintiff was in a different country when he prepared the document.

-10-

knowledge, and belief." In plaintiff's "declaration," plaintiff asserted that Kiley was "disgruntled" when plaintiff obtained employment with MSU in November 2015. According to plaintiff, Kiley "began a vendetta campaign" against plaintiff, including sending him an e-mail "threatening" to depose plaintiff's parents in February 2015.[10] After plaintiff complained to Martinez, his supervisor, Martinez terminated plaintiff's employment "at Kiley's urging. . . ." Plaintiff then began working for Brockman, who sent him an e-mail on April 11, 2016, stating that she had "been advised to discontinue the research."[11] Plaintiff had "reason to believe that Kiley was the individual who warned [] Brockman to discontinue working with" him. On April 20, 2016, Kiley sent plaintiff a letter regarding a manuscript that Martinez authored.[12] Thereafter, plaintiff applied for several positions, but was not hired. According to plaintiff, MSU Assistant Professor Rene Rosenbaum informed plaintiff that he "was being blacklisted." Plaintiff had "reason to believe that Kiley was behind [plaintiff] being blacklisted by virtue of [Kiley's] prior threats against"

---

But, even if he had been, he did not comply with the form laid out in MCL 600.2186, and MCL 600.2184 is clear that an unsworn declaration only has the effect of a sworn declaration if it meets "the requirements of this chapter."

Moreover, MCR 1.109(D)(3) provides:

Except when otherwise specifically provided by rule or statute, a document need not be verified or accompanied by an affidavit. If a document is required or permitted to be verified, it may be verified by

(a) oath or affirmation of the party or of someone having knowledge of the facts stated; or

(b) except as to an affidavit, including the following signed and dated declaration:

"I declare under the penalties of perjury that this _____ has been examined by me and that its contents are true to the best of my information, knowledge, and belief." Any requirement of law that a document filed with the probate court must be sworn may be also met by this declaration.

In addition to the sanctions provided by subrule (E), a person who knowingly makes a false declaration under this subrule may be found in contempt of court.

Pursuant to MCR 1.109(A)(1)(b)(*i*), as used in Subrule 1.109, "Documents include, but are not limited to, pleadings, orders, and judgments." This suggests that the sort of document that can be verified through the procedure laid out in MCR 1.109(D)(3) is limited to court filings rather than documents used to provide factual support for a party's positions. See also *Progress Mich v Attorney General*, 506 Mich 74, 92 n 10; 954 NW2d 475 (2020) (citing MCR 1.109(D)(3) as the procedure for verification of pleadings pursuant to MCL 600.6434).

[10] Plaintiff attached a copy of Kiley's e-mail.

[11] Plaintiff attached a copy of Brockman's e-mail.

[12] Plaintiff attached a copy of Kiley's letter.

-11-

plaintiff. As to Showerman's agricultural position, plaintiff claimed that Showerman had indicated that while plaintiff did not have experience with the required technology program, Showerman recognized that plaintiff had used a similar program while working at Lansing Community College.[13] Plaintiff denied saying that he thought the position was going to be in Macomb County and added that he identified the names of several farmers and agricultural institutions in Montcalm County with whom he had worked.

The trial court determined that defendant's "declaration" was "predicated on conclusory statements without any supporting documentary evidence." Although plaintiff provided Brockman's and Kiley's e-mails along with Kiley's letter, we agree that these documents did not create a genuine issue of material fact regarding plaintiff's claims that Kiley and Showerman retaliated against him as to the 2017-2018 positions he applied for based on his prior protected activity. Kiley's February 2015 e-mail read: "I anticipate taking depositions from your parents,[14] in Lansing. However, informal communication could meet my need. Please provide [their] contact information." There is nothing threatening about requesting contact information for potential witnesses' depositions while noting that informal contact may suffice. See also *Gardner*, unpub op at 6-7. Likewise, Kiley acted within his role as MSU's counsel in sending plaintiff a letter informing him that MSU would pursue available legal remedies in regards to a manuscript it claimed was authored by Martinez and another. See also *Id*. at 6. Indeed, given that plaintiff declared that he had a role in the manuscript's authorship, plaintiff could hardly perceive Kiley's letter as threatening. And plaintiff's declaration that he had "reason to believe that Kiley was the individual who warned [] Brockman to discontinue working with" him in 2016 reveals a lack of personal knowledge supporting his belief. Plaintiff also declared that Martinez terminated plaintiff's employment in 2015 "at Kiley's urging," but it is unclear whether plaintiff had personal knowledge of Kiley's urging. In fact, plaintiff's amended complaint reflected that "Kiley played a role in Plaintiff's termination by issuing threats to MSU administrators and professors who indicated a willingness to work with Plaintiff." In plaintiff's 2019 complaint against Martinez, plaintiff alleged that Martinez identified Kiley "as being involved" in plaintiff's termination. Thus, plaintiff's knowledge of Kiley's role in plaintiff's prior termination was not based on his personal knowledge. Notably, in plaintiff's 2019 complaint, plaintiff further alleged that "[i]n the past, supportive professors have cited . . . [Kiley], as having negatively interacted with them to discourage employment and educational assistance." Yet, plaintiff provided no documentary evidence from his supporters in this case. And, as to plaintiff's declaration that he had "reason to believe that Kiley was behind [plaintiff] being black listed by virtue of his prior threats against" plaintiff, we have already concluded that neither Kiley's e-mail nor letter were threats. Thus, plaintiff's supposition about Kiley's role as to the positions at issue is mere speculation. Plaintiff failed to presented any evidence to dispute Kiley's affidavit that Kiley was unaware of plaintiff's 2017-2018 job applications, that Kiley had "not prevented or instructed anyone against considering [plaintiff] for employment," and that, to Kiley's knowledge, Kiley had "never spoken to or

---

[13] Plaintiff worked for Lansing Community College from 2000 to 2010, teaching economics, accounting, and precision agricultural techniques.

[14] Plaintiff's parents purportedly resided in a facility in Puerto Rico.

-12-

otherwise communicated with . . . Porter" or Showerman.[15] Nor did plaintiff dispute Showerman's affidavit that Showerman was unaware of plaintiff's prior litigation history with MSU and that Showerman had never spoken to or otherwise communicated with Kiley.

In any event, "this Court will not reverse a trial court's order if it reached the right result for the wrong reason." *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 470; 628 NW2d 577 (2001). The trial court should not have considered plaintiff's unsworn "declaration." It was not notarized, was not based solely on plaintiff's personal knowledge, and was not an affidavit. See *Tate v Botsford Gen Hosp*, 472 Mich 904; 696 NW2d 684 (2005); MCR 2.119(B)(1). Because defendants properly supported their motion for summary disposition, plaintiff could not rest on the allegations in his amended complaint, but had to by affidavit, depositions, admissions, or other documentary evidence set forth specific facts showing that there was a genuine issue for trial. MCR 2.116(G)(4) and (6). The e-mails and letter plaintiff submitted for the trial court's consideration did not raise a genuine issue of material fact on whether there was a causal connection between the protected activity and the adverse employment action in light of Kiley's and Showerman's affidavits averring that there was not.

Even so, plaintiff further argues that defendants' motion for summary disposition was premature because he had not yet had the opportunity to complete discovery.

> Generally, a grant of summary disposition is premature before discovery on a disputed issue is complete. However, summary disposition is appropriate if there is no fair chance that further discovery will result in factual support for the party opposing the motion. Thus, the dispositive inquiry is whether further discovery presents a fair likelihood of uncovering factual support for the party's position. [*Doe v Gen Motors, LLC*, 511 Mich 1038, 1038-1039; 992 NW2d 275 (2023) (quotation marks, citations, and alteration omitted).]

"The party must clearly identify the disputed issue for which it asserts discovery must be conducted and support the issue with independent evidence." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 253; 964 NW2d 50 (2020). "Mere conjecture does not entitle a party to discovery, because such discovery would be no more than a fishing expedition." *Danis v Detroit*, 269 Mich App 376, 380; 711 NW2d 462 (2005). We agree with the trial court's conclusion that there was "no fair chance that further discovery will result in factual support for" plaintiff's position.[16]

---

[15] We reject plaintiff's argument that because Kiley's affidavit specifically addressed his lack of communication with Porter and Showerman, it did "nothing to dispel Kiley's intervention" as to the other positions. To the contrary, Kiley averred that he was unaware that plaintiff had applied for any of the positions and that he "did not prevent or instruct *anyone* against considering [plaintiff] for employment." (Emphasis added.)

[16] In plaintiff's 2019 complaint, he discussed his efforts to secure employment at MSU and Kiley's actions in response as did plaintiff's concurrent 2020 litigation in the Court of Claims. See *Gardner*, unpub op at 6-7.

## D. FAILURE TO STATE A CLAIM UNDER MCR 2.116(C)(8)

Plaintiff argues that his complaint adequately alleged that he was qualified for the nine positions and that the trial court applied a higher standard than that required under Michigan law. We agree.

"Michigan is a notice-pleading jurisdiction, which means that a complaint is required to contain only enough information reasonably to inform the defendant of the nature of the claim against which he must defend." *Veritas Auto Machinery, LLC v FCA Int'l Operations, LLC*, 335 Mich App 602, 615; 968 NW2d 1 (2021) (quotation marks and citation omitted). "[T]he primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 317; 503 NW2d 758 (1993). However, a complaint must contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]" MCR 2.111(B)(1).

"[T]he mere statement of a pleader's conclusions, unsupported by allegations of fact, will not suffice to state a cause of action." *ETT Ambulance Serv Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 395; 516 NW2d 498 (1994). "While the lack of an allegation can be fatal under MCR 2.116(C)(8), the lack of *evidence in support* of the allegation cannot." *El-Khalil*, 504 Mich at 162 (emphasis added). "The relative strength of the evidence offered by plaintiff and defendants will matter if the court is asked to decide whether the record contains a genuine issue of material fact," which implicates subrule (C)(10) rather than subrule (C)(8). *Id*. at 162.

In the present case, plaintiff raised a total of 12 ELCRA counts. For each defendant, plaintiff set forth three counts: one for discrimination based on his national origin, one for age discrimination, and one for retaliation. Only the discrimination counts were dismissed pursuant MCR 2.116(C)(8). The trial court determined that plaintiff had not alleged any facts to show that he was qualified for the positions he listed and further failed to allege facts or circumstances giving rise to an inference that the failure to hire him was based solely on his age, ethnicity, or national origin.

In pertinent part, MCL 37.2202(1)(a) provides that "[a]n employer shall not . . . [f]ail or refuse to hire . . . or otherwise discriminate against an individual with respect to employment . . . because of . . . national origin" or "age. . . ." As previously discussed, in order to establish a prima facie case of discrimination based on national origin under the ELCRA, a plaintiff must prove four elements that are tailored to fit the circumstances for each case. For the present case, we rely on those elements set forth in *White*, 334 Mich App at 108: "(1) [plaintiff] belongs to a protected class, (2) [plaintiff] suffered an adverse employment action, (3) [plaintiff] was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination." (Quotation marks and citation omitted.) The same elements may be applied to age discrimination. See *Major*, 316 Mich App at 540-541. The only elements at issue are (3) and (4).

Our Supreme Court has held that "whether the elements of a prima facie case of discrimination have been established constitutes an evidentiary standard, not a pleading

requirement." *El-Khalil*, 504 Mich at 162, citing *Swierkiewicz v Sorema NA*, 534 US 605, 510-511; 122 S Ct 992; 152 L Ed 2d 1 (2002). Our Supreme Court explained that "[w]hile the lack of an allegation can be fatal under MCR 2.116(C)(8), the lack of evidence in support of the allegation cannot." *El-Khalil*, 504 Mich at 162. In this case, plaintiff alleged that he was qualified for the positions he identified by title and year.[17] We conclude that plaintiff's allegations in his first-amended complaint were sufficient to withstand challenge under MCR 2.116(C)(8).

In *Swierkiewicz*, 534 US at 508, the United States Supreme Court addressed "whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by [the United States Supreme] Court in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973)." The *Swierkiewicz* Court held that "an employment discrimination complaint need not include such facts and instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief. *Id*. at 508 (quotation marks and citation omitted). The Court reasoned:

> The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement. In *McDonnell Douglas*, this Court made clear that "[t]he critical issue before us concern[ed] the order and allocation of proof in a private, non-class action challenging employment discrimination." In subsequent cases, this Court has reiterated that the prima facie case relates to the employee's burden of presenting evidence that raises an inference of discrimination.

> This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. For instance, we have rejected the argument that a Title VII complaint requires greater "particularity," because this would "too narrowly constric[t] the role of the pleadings." . . .

> In addition, under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case. Under the Second Circuit's heightened pleading standard, a plaintiff without direct evidence of discrimination at the time of his complaint must plead a prima facie case of discrimination, even though discovery might uncover such direct evidence. It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to

---

[17] We recognize that defendants also contended that they could not identify three positions listed by plaintiff in his amended complaint despite being provided with the position descriptions and denial dates. Those positions included the Native American outreach program position, the dry bean and sugar beet outreach staff position, and the position conducting research on migrant Latino dairy workers. The trial court noted, but did not address, defendants' contention.

-15-

plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.

Moreover, the precise requirements of a prima facie case can vary depending on the context and were "never intended to be rigid, mechanized, or ritualistic." Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases. [*Swierkiewicz*, 534 US at 510-512 (citations omitted; alterations in original).]

Regarding the third element of a prima face case of discrimination based on age or national origin, the trial court determined that plaintiff "has not even pleaded the element of having been qualified for the position in question, much less pleaded any factual support for such an assertion." It is true that plaintiff did not delineate the requirements for each of the positions he applied for; however, review of plaintiff's amended complaint reveals that plaintiff specifically alleged that he was qualified for every position. These included a farm finance position,[18] a sugar beet outreach specialist position, two farm finance outreach positions, a dry bean and sugar beet outreach specialist position, a Native American outreach position, a dairy specialist position, an agricultural position, and a position conducting research on migrant Latino dairy workers. Plaintiff's amended complaint further alleged that he had both a Bachelor and a Master of Science degrees in Animal Science from MSU and had engaged in a doctoral candidacy program in Agricultural Economics for several years. Plaintiff also advocated on behalf of migrant workers, most of whom were Hispanic, Latino, or Chicano. MSU employed plaintiff as a research assistant in 2015 and plaintiff alleged that he was one of the primary authors of "The Relevance of Modern Human Resource Theory for the Dairy Industry." In 2016, plaintiff worked on "a project aimed at developing best labor management techniques for fruit and vegetable growers" and enlisted others in the agricultural community to aid in that project. The trial court erred when it ruled that plaintiff did not plead he was qualified for the positions or factually support that he was qualified.

Turning to the fourth element, the trial court determined that plaintiff failed to allege facts or circumstances giving rise to an inference that the failure to hire plaintiff was based solely on his age, ethnicity, or national origin. Stated otherwise, the trial court found that plaintiff's allegations were insufficient to show that the jobs listed were given to another under circumstances giving rise to an inference of unlawful discrimination.

In plaintiff's amended complaint, however, plaintiff alleged that he was the lone Hispanic applicant for all of the positions and that he was in his late fifties or early sixties. Rather than hiring plaintiff, defendants purportedly hired younger and less qualified non-Hispanic or non-Hispanic Caucasians for seven positions, while no one was selected for one position and a second position was closed, but reopened. Finally, plaintiff alleged that his national origin and his age were factors in defendants' decisions not to hire him for the positions.

---

[18] Plaintiff's suit regarding this position is time-barred.

Again, it is the lack of an allegation, not the lack of evidence in support of an allegation, that is fatal under MCR 2.116(C)(8). *El-Khalil*, 504 Mich at 508. Because plaintiff's amended complaint alleged that numerous positions were given to another person under circumstances giving rise to an inference of unlawful discrimination, the trial court erred in dismissing plaintiff's claims of discrimination based on age and national origin under MCR 2.116(C)(8).

Nevertheless, we affirm the trial court's dismissal of plaintiff's age and national-origin discrimination claims against Showerman and Kiley, and resultantly MSU, under MCR 2.116(C)(10). *Etefia*, 245 Mich App at 470 ("[T]his Court will not reverse a trial court's order if it reached the right result for the wrong reason.") Defendants moved for summary disposition under both MCR 2.116(C)(8) and (10) as to the race and national-origin claims against Showerman. Showerman's affidavit averred that a four-person panel had determined that plaintiff was unqualified for the position and that plaintiff's national origin, race, or age "played no role in the decision not to offer him the . . . position." Among other reasons, Showerman averred that plaintiff was not qualified for the position because he "did not have significant connections to or knowledge about Montcalm County," he "confused Montcalm County with Macomb County several times during his interview," and he was "unfamiliar with basic technology used by the program."

Plaintiff countered in Showerman's affidavit with his "declaration." But, for the reasons already discussed, plaintiff's "declaration" was not an affidavit, MCR 2.119(B)(1)(a)-(c), and should not have been considered by the trial court in deciding defendants' motion for summary disposition under MCR 2.116(C)(10). *Tate*, 472 Mich at 904. Regardless, there is no genuine issue of material fact on the issue of whether the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. *White*, 334 Mich App 108. Plaintiff recognized that he did not have experience with the required technology despite having used a similar program when he taught at Lansing Community College from 2000 to 2010. And, although plaintiff declared that he provided "several" names of farmers and agricultural institutions he worked with in Montcalm County, Showerman's affidavit referenced plaintiff's lack of "significant connections to or knowledge about Montcalm County." Finally, regardless of plaintiff's awareness that the position was in Montcalm County and his claim that he did not assert that he believed that the position was going to be in Macomb County, Showerman averred that plaintiff repeatedly misidentified Montcalm County as Macomb County. Because a four-person panel determined that plaintiff was not qualified for this position and Showerman averred that plaintiff's national origin and age played no part in the hiring decision, Showerman was entitled to summary disposition under MCR 2.116(C)(10).

Turning to Kiley, he averred that he "did not prevent or instruct anyone against considering [plaintiff] for employment," had not communicated with either Showerman or Porter, and was unaware that plaintiff had applied for the positions he listed. Because Kiley was not aware of plaintiff's applications for 2017-2018 positions and averred that he neither instructed nor prevented anyone for considering plaintiff for those positions, plaintiff's speculation or conjecture

as to Kiley's role did not create a genuine issue of material fact.  Kiley was entitled to summary disposition under MCR 2.116(C)(10).[19]

Affirmed in part, reversed in part, and remanded for further proceedings as to plaintiff's counts alleged against Porter and MSU insofar as the allegations against Porter are involved.  We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Anica Letica
/s/ Allie Greenleaf Maldonado

---

[19] Because there was no signed copy of Porter's affidavit in the lower court record, the burden to support entitlement to summary disposition was not established.  MCR 2.116(G)(4); MCR 2.119(B).