*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

JOSEPHINE M. SWIATEK, Trustee of the
JOSEPHINE M. SWIATEK REVOCABLE LIVING
TRUST,

        Plaintiff/Counterdefendant-Appellee,

v

MECOSTA COUNTY ROAD COMMISSION,

        Defendant-Appellee,

and

FLOYD ARNOTT and HELEN ARNOTT,

        Defendants/Counterplaintiffs,

and

EVART LAND HOLDINGS, LLC,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
December 08, 2025
2:00 PM

No. 369739
Mecosta Circuit Court
LC No. 2019-024789-CZ

JOSEPHINE M. SWIATEK, Trustee of the
JOSEPHINE M. SWIATEK REVOCABLE LIVING
TRUST,

        Plaintiff/Counterdefendant-Appellant,

v

MECOSTA COUNTY ROAD COMMISSION,

        Defendant-Appellee,

No. 369749
Mecosta Circuit Court
LC No. 2019-024789-CZ

-1-

and

EVART LAND HOLDINGS, LLC,

          Defendant/Counterplaintiff-Appellee.

_____

Before:  M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

      These are consolidated appeals.[1]  In Docket No. 369739, defendant/counterplaintiff Evart Land Holdings, LLC (Evart), appeals as of right the trial court's order of partition dividing certain real property (the Property) between Evart and plaintiff/counterdefendant.  In Docket No. 369749, plaintiff/counterdefendant appeals as of right the court's order denying plaintiff's motion for summary disposition under MCR 2.116(C)(10) and granting defendant Mecosta County Road Commission's (Road Commission) motion for summary disposition under MCR 2.116(C)(8).  For the reasons stated in this opinion, we affirm.[2]

## I.  BACKGROUND

      This case centers around the Property, which consists of 40 vacant acres in Mecosta County.  Beginning in the 1950s, Josephine Swiatek[3] and her late husband jointly owned the Property, but Josephine acquired her late husband's interest in 1986.  In 2000, Josephine, by then a widow, executed a quitclaim deed conveying the Property to herself as trustee of the Josephine M. Swiatek Revocable Living Trust to be held in benefit for the Trust.  By the time this case began in 2019, Josephine as trustee owned the Property along with the Arnotts as tenants in common, with each side holding a 50% interest.  By court order, the levels of Long Lake were raised in the late 1980s and early 1990s, which resulted in a dam being constructed in approximately the middle of the eastern border of the Property.[4]  Consequently, large portions of the Property were flooded.  Relevant to this appeal, a portion in the northeastern corner of the Property was effectively cut off from the rest of the Property by this flooding (the Disputed Area).  The Property is bordered on

_____

[1] *Josephine M. Swiatek Revocable Living Trust v Mecosta Co Rd Comm*, unpublished order of the Court of Appeals, entered May 16, 2024 (Docket Nos. 369739 and 369749).

[2] Defendants Floyd and Helen Arnott (the Arnotts) originally owned an interest in the Property but ultimately sold their interest to Evart.  The trial court later granted the Arnotts' motion to substitute Evart for themselves.  Accordingly, the Arnotts are not participating in this appeal.

[3] Josephine passed away during the lower court proceedings, and her son, John Swiatek, became successor trustee.

[4] There is no challenge to the propriety of these prior court orders raising lake levels or the resulting flooding that occurred.

the eastern side by 105th Avenue, which has historically provided access to the Property. 105th Avenue was in turn bounded on the north side by Truman Road and by 21 Mile Road in the south.

In 2014, John Chaput, who owned Evart as well as property adjacent to each side of the Property, petitioned the Road Commission to abandon a portion of 105th Avenue beginning at the dam, running north along the Disputed Area, and ending farther north and past the Property. Plaintiff objected to the petition, and the Road Commission conducted an investigation. It determined through inspection of the petitioned area that the supposed "road" was nonexistent, overgrown with trees, crossed two bodies of water, and showed no signs of use or of being maintained. The inspector recommended that the public interest would best be served by abandonment. In 2017, the Road Commission voted to abandon the requested portion of 105th Avenue.

In 2019, plaintiff filed a complaint against the Road Commission for inverse condemnation alleging that the abandonment made the Property "landlocked" with no way to access it, thereby constituting a de facto taking requiring compensation. Plaintiff included the Arnotts as defendants because of their interest in the Property, but the Arnotts made it clear that they did not wish to participate in the litigation, which was why plaintiff added them as defendants rather than plaintiffs. The Arnotts filed a countercomplaint against plaintiff seeking to partition the Property because of a breakdown in their relationship with Josephine. The Arnotts requested that the Property be partitioned into an eastern and western half, with plaintiff receiving the eastern half (the eastern portion) and the Arnotts receiving the western half (the western portion) with compensation to construct a driveway. However, the Arnotts did not oppose receiving the eastern portion, and, if partition was not possible, the Arnotts supported selling the Property and dividing the proceedings.

Regarding the inverse condemnation action, plaintiff and the Road Commission both moved for summary disposition, with plaintiff moving for summary disposition under MCR 2.116(C)(10) and the Road Commission moving under both MCR 2.116(C)(8) and (10). The crux of plaintiff's argument was that road access to one's property was a property right recognized in Michigan and that, if property access was limited, this represented a taking requiring compensation. Plaintiff argued that it was undisputed that the abandoned portion of 105th Avenue no longer provided access to the Disputed Area. Plaintiff contended that *all* access to the Property had been lost and that plaintiff had effectively been "ousted." The Road Commission countered that the Property was not landlocked nor did plaintiff lose all access to the Property. Instead, only a small portion of 105th Avenue had been abandoned, namely that bordering the Disputed Area, and the remainder of the Avenue remained open and allowed plaintiff to access the other portions of the Property.

Further, the Road Commission contended that it was not to be held responsible for the internal conditions of the Property and how these may affect plaintiff's access to parts of the Property. The Road Commission also argued that plaintiff could not show the two elements for an inverse condemnation claim because plaintiff had not shown any decrease in value to the Property as a result of the abandonment or that the Road Commission had abused its power and directly aimed such abuse at the Property. The trial court denied plaintiff's motion, reasoning that plaintiff still had access to the Property via 105th Avenue and that plaintiff had also failed to show any abuse of power directly aimed at the Property. Instead, the court granted summary disposition

in favor of the Road Commission under MCR 2.116(C)(8), reasoning that plaintiff had failed to plead that the Road Commission had abused its power and directly aimed such abuse at the Property.

With the inverse condemnation action dismissed, the partition proceedings initiated by the Arnotts were continued. Plaintiff moved for the appointment of a partition commissioner under MCR 3.402(B). However, the Arnotts opposed this appointment because they were in the process of selling their interest to Evart and would be moving to substitute Evart into their place. The Arnotts argued that Evart, as the new owner, may wish to weigh in on whether the Property should be partitioned. After Evart was substituted into the Arnotts' place, Evart opposed plaintiff's motion because it had doubts concerning whether the Property could be equitably partitioned. Evart requested additional discovery to ascertain whether partitioning could occur. The trial court agreed and granted further discovery.

After additional discovery, Evart subsequently moved for a sale in lieu of partition. The crux of Evart's position was that the Property could not be equitably sold because of its unique characteristics, such as the lake and presence of wetlands. Evart argued that dividing the Property in half would effectively landlock the western portion unless a road was constructed inside the Property and an easement placed onto the eastern portion. Plaintiff countered that a partition commissioner could assist in helping to determine how to best partition the Property. The trial court agreed and denied Evart's motion, reasoning that Evart had failed to show that partitioning would result in undue prejudice to the parties. The court determined that Evart's arguments were largely speculative and based on unknowns that a partition commissioner could help answer. However, if the commissioner was unable to do so, the court would revisit the possibility of a sale.

The trial court appointed a commissioner, who in turn completed a report concluding that the Property could be equitably partitioned provided that the parties were agreeable to whomever owned the Disputed Area having limited access. The commissioner recommended that Evart receive the eastern portion and that plaintiff receive the western portion, reasoning that Chaput, who was behind Evart, owned property that would more easily afford him access to the Disputed Area versus plaintiff who would have to cross the internal waters of the Property. Both parties objected to the recommendation. Both argued that the commissioner had failed to include the submerged portions of the Property in the proposed partitioning, which the court agreed with and ordered the commissioner to address in an amended report. Evart also contended that partitioning was not possible because the eastern portion was more valuable; however, to the extent Evart received the eastern portion, it would not object. Plaintiff similarly desired the eastern portion and reasoned that, because the Swiatek family had owned the Property for decades, plaintiff should have first choice of the parcels. Plaintiff also contended that Chaput should not benefit from his actions in having a portion of 105th Avenue closed.

In the commissioner's amended report, he determined that a reasonable split could still occur with the submerged portions included in the proposed partition. The parties both objected yet again on similar grounds as the first. After taking testimony at a hearing from the commissioner and hearing oral arguments, the trial court took the matter under advisement before entering a written order on October 17, 2023. The court split the Property into two halves, with plaintiff receiving the eastern portion and Evart receiving the western portion. The court noted the commissioner's recommendation, the objections by the parties, and the oral arguments from the

parties. The court summarily stated: "After hearing arguments from both parties and the testimony of the Partition Commissioner, this Court does not agree with the Commissioner's determination." Several months later, the court entered the final order of partition reiterating the same division between the parties and adopting the partition map of the commissioner. The court stated that this was "[b]ased on MCR 3.402 and the parties' objections and responses to the [Commissioner's] Report, and for the reasons stated in this Court's October 17, 2023 Order[.]" This appeal followed.

## II. DOCKET NO. 369739–PARTITIONING

### A. STANDARD OF REVIEW

Evart argues that the trial court erred in two respects. First, the court erred by reversing the commissioner's recommendation without adequate findings or explanation. Second, the court erred by partitioning the Property in lieu of a sale. Trial courts exercise equitable powers when determining whether property can be partitioned and, if so, how to do so. *Schaaf v Forbes*, 338 Mich App 1, 19; 979 NW2d 358 (2021). "When reviewing equitable matters, this Court reviews for clear error the findings of fact in support of the equitable decision rendered and reviews de novo the ultimate decision." *Id*. Clear error occurs when "after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *Lawrence v Burdi*, 314 Mich App 203, 220; 886 NW2d 748 (2016). Further, "[i]n an equitable action, a trial court looks at the entire matter and grants or denies relief as dictated by good conscience," and "[b]roadly speaking the sound discretion of the court is the controlling guide of judicial action in every phase of a suit in equity." *In re Temple Marital Trust*, 278 Mich App 122, 142; 748 NW2d 265 (2008) (quotation marks and citations omitted; first alteration in original). Finally, this Court reviews de novo the interpretation and application of statutes and court rules. *Kuebler v Kuebler*, 346 Mich App 633, 653; 13 NW3d 339 (2023).

### B. ANALYSIS

Partitions and their proceedings are contained both within statute and court rule. The trial court may order partition of property unless partitioning cannot be achieved "without great prejudice to the owners." MCL 600.3332. Similarly, MCR 3.401 provides in relevant part:

> (A) Matters to Be Determined by Court. On the hearing of an action or proceeding for partition, the court shall determine

> (1) whether the premises can be partitioned without great prejudice to the parties;

> * * *

> (B) Partition or Sale in Lieu of Partition. If the court determines that the premises can be partitioned, MCR 3.402 governs further proceedings. If the court determines that the premises cannot be partitioned without undue prejudice to the owners, it may order the premises sold in lieu of partition under MCR 3.403.

The trial court must "determine the rights and interests of the parties in the premises . . . ." MCR 3.402(A). MCR 3.402(B), which governs partition commissioners and their role in such

-5-

proceedings, provides in pertinent part that "[t]he court shall appoint a disinterested person as partition commissioner to make the partition according to the court's determination of the rights and interests of the parties." MCR 3.402(B)(1).

The "commissioner shall divide the premises and allot the respective shares according to the terms in the court's judgment or separate order, and shall designate the several shares and portions by reference to a plat or survey prepared by a land surveyor or engineer licensed by the state." MCR 3.402(C)(2). Additionally, the "commissioner must report to the court, specifying the procedures followed, describing the land divided and the shares allotted to each party, and listing the commissioner's charges." MCR 3.402(C)(3). The trial "court may modify or set aside the report and may refer the action to either the same or a newly appointed partition commissioner as often as necessary." MCR 3.402(D)(1). If the court confirms the report, it must enter judgment regarding the interests of all parties within the partition proceeding. See MCR 3.402(D)(2). While MCR 3.403 describes how to conduct a sale of premises in lieu of partition, it does not specify any additional instructions for how a court determines that such a sale is necessary.

Remand is appropriate "when the record is insufficient to allow meaningful appellate review . . . ." *Lehman Investment Co, LLC v City of the Village of Clarkston*, 347 Mich App 736, 754; 16 NW3d 584 (2023). Here, without seemingly any findings, the trial court entered its two orders disagreeing with the commissioner and awarding the eastern portion to plaintiff rather than Evart. However, although the trial court's findings are reviewed for clear error, the overall partition is reviewed de novo, *Schaaf*, 338 Mich App at 19, and the record is sufficient for us to make such a review. See also MCR 7.216(A)(7) (stating that this Court may "enter any judgment or order or grant further or different relief as the case may require").

As an initial matter, we disagree with Evart's position regarding the role of the commissioner. Evart suggests that it was the partition commissioner who was empowered to partition the Property, not the trial court, and that the trial court was required to make explicit findings regarding the reason why it went against the commissioner's determinations. However, it is the court, not the commissioner, that is to determine the rights of the parties and whether a property can be partitioned. See MCR 3.401(A) to (B); MCR 3.402(A). The commissioner is tasked with "mak[ing] the partition *according to the court's determination* of the rights and interests of the parties." MCR 3.402(B)(1) (emphasis added). Similarly, the "commissioner shall divide the premises and allot the respective shares *according to the terms in the court's judgment or separate order . . . .*" MCR 3.402(C)(2) (emphasis added). In other words, the commissioner assists the court with carrying out partitioning of property. There are no requirements for the court to follow the commissioner's report. In fact, the court may choose to reject the report, and there are no requirements for any findings to be made if this occurs. See MCR 3.402(D)(1).

Moving to the merits of the partitioning, the commissioner's sole rationale for awarding the eastern portion to Evart was the determination that, through Chaput owning adjacent property, Evart would have easier access to the Disputed Area versus plaintiff. However, there were also additional reasons to support plaintiff receiving the eastern portion over Evart. Chaput effectively owned property around the *entire* Property, including the northwestern side. In contrast, plaintiff did not own any other property in the area. John Swiatek, Josephine's son, affirmed that awarding plaintiff the western portion would create access problems for the family. Accordingly, while awarding Evart the eastern portion would certainly made it easier for Chaput to access the Disputed

-6-

Area versus plaintiff, the same could be said of the western portion as well because of his adjacent property versus plaintiff's lack of access. Additionally, plaintiff had a unique interest in the eastern portion because of her inverse condemnation claims involving the Disputed Area, which the commissioner explained that he did not consider.

Moreover, the Swiatek family had owned the Property since the 1950s and had longstanding plans to construct both a family retreat within the Disputed Area, which offered high, panoramic views of the area and sunsets over Long Lake, as well as residential use, which the eastern portion was better suited for. In contrast, Evart's immediate plans would likely be for hunting with only the possibility of other uses such as development, and John affirmed that the western portion was better suited for hunting. Therefore, awarding plaintiff the eastern portion, which bordered 105th Avenue, would provide easier access for plaintiff, and met the parties' plans for their respective parcels, made equitable sense based on the circumstances for *both* sides. Additionally, while true that plaintiff desired the eastern portion, Evart did as well and only objected to the extent it did not receive this portion. Moreover, Evart points to no authority to support its position that a party cannot be awarded a portion of property via partition when that party desires that portion. "A party may not leave it to this Court to search for authority to sustain or reject its position." *Magee v Magee*, 218 Mich App 158, 161; 553 NW2d 363 (1996). When "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (quotation marks and citation omitted).

Moving to Evart's alternative position that the Property should have been sold in lieu of partitioning, "[p]hysical division of the jointly held property is the preferred method of partition." *Albro v Allen*, 434 Mich 271, 284; 454 NW2d 85 (1990). "Although partition in kind is favored, the court may also order sale and division of the proceeds when it concludes that an equitable physical division cannot be achieved." *Id*. See also *Temple Marital Trust*, 278 Mich App at 145 (accord). Here, the trial court's division gave the western portion a strip of land along the southern portion of the Property that connected it to 105th Avenue, and the eastern portion bordered the Avenue. Accordingly, both parcels had public road access. Furthermore, the commissioner opined that partitioning was equitably possible provided that the parties were agreeable to having limited access to the Disputed Area. This condition was met because both parties desired the eastern portion over the western portion without regard for the Disputed Area's potential access issues.

Evart focuses a large portion of its argument on the fact that both parties desired the eastern portion. According to Evart, this necessarily showed that partitioning would lead to undue prejudice because it demonstrated that the eastern portion was far more valuable than the western portion. However, apart from both parties desiring the eastern portion, Evart points to no evidence that the eastern portion was in fact more valuable than the western portion. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *Bill & Dena Brown Trust*, 312 Mich App at 695 (quotation marks and citation omitted). In contrast, there was evidence showing that the two parcels were valued similarly. The commissioner appraised the Property at $82,000, and nothing within the appraisal addressed any value differences between the proposed western and eastern portions. Moreover, the commissioner testified that he believed the two halves in his proposed partition would be of equal or similar value. In addition, Evart points to no authority demonstrating that parties desiring

the same portion of a property necessarily means that partitioning would be inequitable. See *Bill & Dena Brown Trust*, 312 Mich App at 695; *Magee*, 218 Mich App at 161.

Evart attempts to magnify the Property's "unique characteristics," arguing that this made partitioning necessarily prejudicial to the parties. One of these characteristics Evart focuses on is the Disputed Area, but, as previously discussed, this characteristic made little difference because both parties wanted the portion with the Disputed Area. Evart points to the inverse condemnation action and how the commissioner did not account for this in the report, but Evart offers only speculation that *if* plaintiff wins the inverse condemnation appeal, the eastern property's value would be increased. As will be discussed later in this decision, we affirm the dismissal of that claim, which dispenses with Evart's speculation. Additionally, although a significant portion of the Property was submerged, Evart fails to show *how* that fact rendered partition impossible. As shown by the commissioner's survey sketch, it was a relatively easy matter to divide the Property such that each parcel held approximately the same acreage of Long Lake. The trial court determined that Evart failed to overcome the burden in favor of partition, and our review of the evidence convinces us that this was not erroneous.

## III. DOCKET NO. 369749–INVERSE CONDEMNATION

### A. STANDARD OF REVIEW

Plaintiff argues that the trial court erred by granting summary disposition in favor of the Road Commission under MCR 2.116(C)(8) while denying plaintiff's own motion under (C)(10). This Court reviews de novo a trial court's decision on summary disposition. *Tripp v Baker*, 346 Mich App 257, 272; 12 NW3d 45 (2023). A motion is properly granted pursuant to MCR 2.116(C)(8) when the opposing party fails to state a claim upon which relief can be granted. Such a motion "tests the legal sufficiency of the claim on the basis of the pleadings alone . . . ." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). When reviewing the motion, the trial "court must accept as true all factual allegations contained in the complaint." *Id*. The trial court must grant the motion "if no factual development could justify the plaintiff's claim for relief." *Id*. (quotation marks and citation omitted). In contrast, a motion is properly granted pursuant to MCR 2.116(C)(10) "when the proffered evidence fails to establish a genuine question of fact." *Tripp*, 346 Mich App at 262. This Court must review "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. (quotation marks and citation omitted). As this Court explained,

> "the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." [*Id*. (citation omitted).]

Finally, this Court reviews constitutional questions de novo. *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013).

## B. ANALYSIS

"The Takings Clauses of the Michigan and United States Constitutions both prohibit the taking of private property for public use without just compensation." *Gym 24/7 Fitness, LLC v Michigan*, 341 Mich App 238, 260; 989 NW2d 844 (2022) (quotation marks and citation omitted). As this Court explained:

> [T]here are physical takings and regulatory takings. A regulatory taking involving the deprivation of *all* economically productive or beneficial use of property is also a categorical taking, requiring the payment of just compensation. The second type of regulatory taking—a noncategorical taking—is one that is determined upon application of the *Penn Central* [*Transp Co v New York City*, 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978)] balancing test. Additionally, inverse condemnation arises when the government takes property, either by physical invasion or regulation, absent formal condemnation proceedings. [*Gym 24/7 Fitness*, 341 Mich App at 262-263.]

"[A] partial destruction or diminution of value of property by an act of government, which directly and not merely incidentally affects it, is to that extent an appropriation." *Peterman v Dep't of Natural Resources*, 446 Mich 177, 190; 521 NW2d 499 (1994) (quotation marks and citations omitted).

"Inverse condemnation is a de facto taking in which the government effectively takes property absent formal condemnation proceedings." *Gym 24/7 Fitness*, 341 Mich App at 261. This type of taking "concerns the taking of private property, and pursuant to the Takings Clauses, a victim of such a taking is entitled to just compensation for the value of the property taken." *Id*. at 262 (quotation marks and citation omitted). "Inverse condemnation can occur without a physical taking of the property; a diminution in the value of the property or a partial destruction can constitute a 'taking.'" *Mays v Governor*, 506 Mich 157, 173; 954 NW2d 139 (2020) (citations omitted; alteration in original).

There are two elements that a plaintiff must prove for an inverse condemnation claim: "(1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property." *Id*. at 174 (quotation marks and citations omitted). A plaintiff "must prove a causal connection between the government's action and the alleged damages," and "[g]overnment actions directed at a plaintiff's property must have the effect of limiting the use of the property." *Id*. at 173 (quotation marks and citation omitted). Courts must look at the totality of the government's actions rather than any individual action. *Id*. at 173-174.

Moreover, "a claimant must first establish a vested property right under state law." *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 455; 952 NW2d 434 (2020). Property rights are not created by constitutional law but, instead, are "determined by reference to existing rules or understandings that stem from an independent source such as state law." *Id*. (quotation marks and citation

omitted). "Although a property owner has the right to access his or her property from public highways, a property owner is not entitled to access at all points." *Scholma v Ottawa Co Rd Comm*, 303 Mich App 12, 16-17; 840 NW2d 186 (2013) (citation omitted). Rather, a property "owner is only entitled to convenient and reasonable access." *Id*. at 17.

Here, when the court granted the Road Commission's motion for summary disposition under Subrule (C)(8), the court reasoned that plaintiff had failed to plead the second element of an inverse condemnation claim because plaintiff had not alleged that the Road Commission had abused its otherwise legitimate powers in abandoning portions of 105th Avenue. However, plaintiff alleged that the abandonment of portions of 105th Avenue interfered with the use of and access to the Property by landlocking it such that it constituted a de facto taking and inverse condemnation. Plaintiff alleged that Josephine objected to the abandonment, that the Road Commission still voted to confirm the abandonment, and that plaintiff had lost *all* access to the Property. Taking such allegations as true, which the trial court was bound to do, see *Bailey*, 494 Mich at 603, the court was presented with a scenario in which a government entity allegedly deprived a property owner of *all* access to property by abandoning part of a road over the property owner's objections. We are persuaded that this was sufficient to plead an abuse of power directly aimed against property. As such, the court erred by granting summary disposition under MCR 2.116(C)(8).

However, summary disposition was warranted under MCR2.116(C)(10), and this Court may affirm a decision regarding summary disposition when the trial court reached the right result for the wrong reasons. See *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). Plaintiff's inverse condemnation action fails because plaintiff has not shown a vested property right under state law that has been substantially interfered with by the Road Commission's abandonment by portions of 105th Avenue. Plaintiff alleged that the abandonment of portions of the Avenue prevented *all* access to the Property and constituted an ouster. However, the evidence did not support this claim. Only a *portion* of the Avenue bordering the Property was abandoned. The remainder of the Avenue remained open to the public and allowed plaintiff to access the Property. Both Josephine and John testified as much, and the maps of the Property confirm this.

Therefore, while plaintiff is correct that a diminution in the value of property can constitute a taking, see *Mays*, 506 Mich at 173, plaintiff must still show that the Road Commission interfered with a property right, *Rafaeli*, 505 Mich at 455, and a property owner does not have the right to access property from all points of a public highway, only the right to convenient and reasonable access, *Scholma*, 303 Mich App at 16-17. Here, there was no genuine issue of material fact that plaintiff still had convenient and reasonable access to the Property via the unabandoned portions of 105th Avenue and could also still access the Disputed Area, albeit by slightly less convenient means. Furthermore, the lack of access to the Disputed Area largely came as a result of internal property dynamics, namely the flooding from Long Lake that separated sections of the property from one another, which the Road Commission had no control over. Plaintiff points to no authority showing that government entities may be held accountable for such internal property conditions. In other words, the effects of the Road Commission's actions were largely incidental to the Disputed Area. See *Peterman*, 446 Mich at 190.

Additionally, plaintiff failed to create an issue of material fact regarding element one of an inverse condemnation action because plaintiff failed to present any evidence that the Property's

value was negatively affected by the abandonment of a portion of 105th Avenue. Plaintiff did not present any appraisals or expert testimony. In fact, prior to her passing, Josephine testified that she did not know if the Property had lost value as a result of the abandonment of a section of the Avenue, and no one had told her that the Property had lost value. Similarly, plaintiff failed to show that the Road Commission's actions constituted an abuse of power directly aimed at the Property. After the petition was filed, the Road Commission inspected the petitioned area, determined that it was not a properly maintained or functioning road, that abandonment would not landlock any properties, and that the public interest was best served by formally abandoning it. Moreover, the abandoned portion ran beyond the Disputed Area and affected other properties. John also provided testimony suggesting that the abandoned area was no longer passable via regular vehicle and that this had been the case potentially for decades. Accordingly, there was no genuine issue of material fact regarding element two of an inverse condemnation action.

Finally, the trial court did not abuse its discretion by not permitting plaintiff to amend its complaint under MCR 2.116(I)(5). Plaintiff only sought amendment in the event the trial court granted summary disposition under MCR 2.116(C)(8), not (C)(10). For those reasons already discussed, we agree that the court erroneously granted summary disposition under Subrule (C)(8), which means it was unnecessary for plaintiff to amend its complaint on this front. However, amendment would not have forestalled summary disposition under Subrule (C)(10). Discovery had already occurred, the relevant facts were clearly established, and plaintiff's inverse condemnation action failed based on those facts. Plaintiff indisputably still had access to the Property via the unabandoned portions of 105th Avenue and had failed to create a genuine issue of material fact regarding the two elements for an inverse condemnation claim.

Affirmed.

/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney